In the Matter of JOHN P. (ANONYMOUS), Respondent. W. R. BRESNAHAN, Appellant.

Second Department, May 5, 1980

## APPEARANCES OF COUNSEL

*Marc L. Parris, County Attorney (Gary L. Lipton* of counsel), for appellant.

*Robert Abrams, Attorney-General (Robert J. Schack* and *George D. Zuckerman* of counsel; *Ann Horowitz* on the brief), intervenor *pro se.*

## OPINION OF THE COURT

GULOTTA, J.

The question raised by this appeal, which appears to be one of first impression, is whether the petitioner in a juvenile delinquency proceeding may constitutionally appeal an enforceable dispositional order of the Family Court on the ground, *inter alia,* that it was not supported by a preponderance of the evidence (see Family Ct Act, § 745). The gravamen of appellant's position is that the order of the Family Court was unduly lenient in declining to place the respondent in a residential treatment center.

For reasons which shall hereinafter appear, the question must be answered in the negative and the appeal dismissed.

On the petition of W. R. Bresnahan, a youth officer employed by the Orangetown Police Department, respondent herein, John P., was charged with the commission of acts which, if done by an adult, would have constituted the crimes of burglary in the third degree, grand larceny in the third degree and criminal mischief in the fourth degree, as well as a violation of section 265.05 of the Penal Law ("unlawful possession of weapons by persons under sixteen"). Following a fact-finding hearing, respondent was adjudicated a juvenile delinquent and a dispositional hearing was ordered. That hearing was commenced on September 7, 1978 and continued on September 14, 1978, at which time the court announced its decision and entered an order placing respondent on probation for a period of one year and imposing extensive terms and conditions, including the requirements that he (1) receive therapy at the Orangetown Mental Health Clinic and (2) make restitution in the amount of $780. Insofar as it appears on the present record, that dispositional order was never stayed (see Family Ct Act, §§ 762, 1114), so that the term of probation was due to expire by September 14, 1979. In the absence of any indication to the contrary, the foregoing will be assumed to be the fact, and thus the probationary period is now at an end.

Although nothing particularly unusual had yet occurred, the nature of the case changed somewhat radically when the prosecuting agency, the Rockland County Attorney's office (see Family Ct Act, § 254; see, also, § 254-a), filed a notice of appeal challenging the dispositional order of the Family Court on the ground, *inter alia,* that the order placing respondent on probation was not supported by a preponderance of the evidence as required by section 745 of the Family Court Act and that the

evidence adduced at the dispositional hearing preponderated in favor of a "harsher" disposition, to wit, placement in a residential treatment center. In point of fact, then, appellant's "bedrock" position is that the order of disposition was unduly lenient in that it failed to adequately consider "the needs and best interests of the respondent as well as the need for [the] protection of the community" (Family Ct Act, § 711). The appeal has been taken pursuant to section 1112 of the Family Court Act, which provides, *inter alia:* "An appeal may be taken as of right from any order of disposition and, in the discretion of the appropriate appellate division, from any other order under this act." While cognizant of the fact that the statute, as written, would not appear to restrict the right of appeal to the respondent in delinquency proceedings initiated pursuant to article 7 of the Family Court Act (cf. Family Ct Act, §§ 762, 764), we perceived a possible constitutional problem with regard to the application of the statute to the instant appeal. Accordingly, by letter dated September 10, 1979, we invited the Attorney-General to intervene and brief the constitutional question (see CPLR 1012, subd [b]). That invitation was accepted in due course and a brief filed.[1]

In our view, it would be violative of the constitutional prohibition against double jeopardy to permit the petitioner in proceedings initiated pursuant to article 7 of the Family Court Act to appeal an enforceable dispositional order of the Family Court for the purpose of having the severity of that order increased, whether on appeal or following a remand to the Family Court.

As the United States Supreme Court has only recently observed *(Breed v Jones,* 421 US 519, 528), "[j]eopardy denotes risk." In the constitutional sense, therefore, jeopardy describes the type of risk which traditionally has been associated with criminal prosecutions, but now, by virtue of the court's decision in the *Breed* case *(supra),* has been expanded to include juvenile proceedings such as the one involved in the instant case. Thus, as the court observed *(supra,* at p 529): "We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in

1. We wish to acknowledge the assistive nature of that brief.

such a determination and the deprivation of liberty for many years." In this respect, then, juvenile proceedings have been placed on a par with adult criminal proceedings, as the court concluded that it "[could] find no persuasive distinction [in terms of the *kind* of risk to which jeopardy refers] * * * between [a delinquency] proceeding * * * and a criminal prosecution, each of which is designed 'to vindicate [the] very vital interest in [the] enforcement of [the] criminal laws.' *United States v. Jorn* [400 US 470], *supra,* at 479" *(Breed v Jones, supra,* at p 531).

Co-ordinate with the scope of the risk subscribed by the concept of jeopardy as just discussed, it has been said that the constitutional prohibition against "double jeopardy" in fact encompasses three distinct constitutional protections, any of which may be applicable in a particular case. Thus, as the court remarked in *North Carolina v Pearce* (395 US 711, 717): "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. *And it protects against multiple punishments for the same offense"* (emphasis supplied; see, also, *Brown v Ohio,* 432 US 161, 165).[2] Needless to say, it is this last protection which is implicated in the case under review, for here there will be no second trial (as was the case in *Breed),* but rather, if appellant should prevail, a new dispositional order (whether or not preceded by a hearing) substituting that which, in all candor, may well constitute a different, more severe measure of discipline (cf. *Breed v Jones, supra,* at pp 529-530, and n 12; *Matter of Winship,* 397 US 358, 365-366; *Matter of Gault,* 387 US 1, 36, 50) for the one already validly imposed by the Family Court and suffered by the respondent.[3] In this regard, the controlling constitutional principle was laid down more than 100 years ago in the landmark case of *Matter of Lange* (18 Wall [85 US] 163, 168-

2. More recently, the Supreme Court has made it clear that a defendant's "valued right" to have his trial completed by a particular tribunal is also encompassed within the double jeopardy clause (see *Crist v Bretz,* 437 US 28, 36).

3. Manifestly, we are not here concerned with those double jeopardy issues which may arise when a defendant is retried upon the same charge following a mistrial (e.g., *United States v Jorn,* 400 US 470) or dismissal of the indictment or information (e.g., *United States v Jenkins,* 420 US 358), or after a conviction is reversed on appeal (e.g., *United States v Ball,* 163 US 662). Nor are we concerned with the permissibility of a governmental appeal from an *invalid* sentence (e.g., *Bozza v United States,* 330 US 160; cf. CPL 450.30, subd 2), as opposed to an appeal from a lawful sentence whose wisdom or propriety is being questioned.

169, 173), wherein Mr. Justice MILLER observed for the majority:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

"The principle finds expression in more than one form in the maxims of the common law. In civil cases the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause. *Nemo debet bis vexari pro una at eadem causa.* It is upon the foundation of this maxim that the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action.

"In the criminal law the same principle, more directly applicable to the case before us, is expressed in the Latin, *'Nemo bis punitur pro eodem delicto,'* or, as Coke has it, *'Nemo debet bis puniri pro uno delicto.'* No one can be twice punished for the same crime or misdemeanor, is the translation of the maxim by Sergent Hawkins.

"Blackstone in his Commentaries, cites the same maxim as the reason why, if a person has been found guilty of manslaughter on an indictment, and has had benefit of clergy, *and suffered the judgment of the law,* he cannot afterwards be appealed.

"Of course, if there had been no punishment the appeal would lie, and the party would be subject to the danger of another form of trial. But by reason of this universal principle, that no person shall be twice *punished* for the same offence, that ancient right of appeal was gone when the punishment had once been suffered. The protection against the action of the same court in inflicting punishment twice must surely be as necessary, and as clearly within the maxim, as protection from chances or danger of a second punishment on a second trial. * * *

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences

pronounced on the same verdict? Why is it that, having once been tried and found guilty, [an individual] can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?

"The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it."

In a similar vein, but more recently, the Supreme Court has stated that under the double jeopardy clause: "When a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of *further punishment* by being again tried *or sentenced* for the same offense" *(United States v Wilson,* 420 US 332, 343; emphasis supplied).

In *Matter of Lange* (18 Wall [85 US] 163, *supra),* the defendant was tried and convicted of the Federal misdemeanor of appropriating mailbags to his own use, under a statute which carried a maximum penalty of imprisonment for one year or a fine of $200. Lange, however, was sentenced to one year in prison *and* a $200 fine, which he paid the following day. After embarking upon the service of his prison term, the defendant was brought before the circuit court on a writ of habeas corpus, whereupon the court, realizing its error, vacated its former judgment and imposed a one-year prison term. On certiorari, the Supreme Court was faced with the question of whether a court could, after the execution of one of the alternative punishments available to it, vacate that disposition and impose an alternate punishment, which question the court answered in the negative and ordered the defendant's release. Writing for the majority, Mr. Justice MILLER observed in language some of which has been quoted above, that the constitutional prohibition against double jeop-

ardy was designed primarily to protect a defendant from being twice *punished* for the same offense and, focusing on the fact that Lange had already paid the fine, concluded that having fully suffered one of the legitimate punishments imposed by law, he could not thereafter be subjected to an additional penalty for the same offense. Thus, the court opined *(supra,* at p 176): "We are of the opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone * * * [T]he principle we have discussed then interposed its shield, and forbid that he should be punished again for that offence. The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offence, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offence was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist." (Accord *Matter of Bradley,* 318 US 50; cf. *North Carolina v Pearce,* 395 US 711, supra.)

In our view, *Matter of Lange* is controlling in the present case, for here, as in *Lange,* the respondent has fully suffered one of the alternate punishments (i.e., "dispositions") imposed by law (Family Ct Act, § 753) and, if petitioner were to prevail on appeal, the direct result would be to subject the respondent to the possible entry of a *different* dispositional order, which would, in turn, expose him to *another* measure of discipline in addition to that already fully suffered. This the law may not do, for, as the Supreme Court observed in *Matter of Lange (supra,* at p 173): "[O]f what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced [up]on the same verdict?"[4] Manifestly, if

---

4. In our view, the principle espoused in *Matter of Lange* (18 Wall [85 US] 163), i.e., that the double jeopardy clause was designed, in large part, to protect against multiple punishments, has not been vitiated by pronouncements such as those in *United*

such circumstances were to prevail, the protection afforded by the Constitution would be minimal at best and of little practical value (accord *Matter of Bradley,* 318 US 50, *supra).* As one of the alternate measures of discipline which the law could impose has already been fully suffered (cf. *Bozza v United States,* 330 US 160), the power of the court to punish further is at an end and the appeal must be dismissed.[5]

In addition to the foregoing, we have concluded that there exists an independent ground for dismissal, for even in the absence of a fully executed dispositional order, we believe that an appeal by the petitioner challenging, in effect, the "leniency" of an order of disposition is barred by the double jeopardy clause, at least in the absence of a statute expressly providing for such a right as an adjunct to an appeal by the respondent contesting the propriety of the dispositonal order. As the present statute does not so provide, the appeal must be dismissed.

Although this precise issue appears to be novel, at least among the appellate courts of this State (but see *State ex rel. C. B.,* 163 NJ Super 215), there exist any number of criminal cases which have dealt, in a general way, with the question of governmental appeals aimed at securing an increase in an

---

*States v Ball* (163 US 662, 669) to the effect that the constitutional bar "is not against being twice punished, but against being twice put in jeopardy" (see, also, *Breed v Jones,* 421 US 519, 532; *Price v Georgia,* 398 US 323, 329). In each of these cases, the court was not writing to restrict the scope of the double jeopardy clause, but rather to expand it by rejecting claims that it prohibited only multiple punishments.

5. Compare *North Carolina v Pearce* (395 US 711) wherein the imposition of a longer sentence following a court-ordered retrial obtained on *defendant's* appeal was sustained with the following two provisos: (1) that the defendant be fully "credited" with the time already served on his original conviction; and (2) that the augmented sentence be based solely upon "objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing proceeding" *(supra,* at p 726; emphasis supplied). Particularly important for present purposes is the first admonition, as the court observed *(supra,* at pp 718-719): "We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. *But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed"* (emphasis supplied). The possibilities for effective "crediting" appear somewhat doubtful where, as here, the dispute concerns different *types* of dispositions (see Family Ct Act, § 753) rather than the *length* of a particular sentence.

otherwise valid sentence, and while the bulk of what has been written on the subject has involved dicta, both its source and its strength are compelling.[6]

In *Murphy v Massachusetts* (177 US 155), for example, the defendant was convicted of embezzlement in a State court and sentenced to a term of imprisonment of not less than 10 nor more than 15 years. While incarcerated, the defendant appealed and some two and one-half years later the Supreme Judicial Court of Massachusetts reversed his sentence (on the ground that the statute pursuant to which he had been sentenced was unconstitutional),[7] and remanded the case to the trial court for the imposition of a new sentence. The trial court thereupon resentenced the defendant to a term of imprisonment which was arguably greater than the term of his original sentence. Murphy again appealed, but this time the Supreme Judicial Court of Massachusetts affirmed. In the United States Supreme Court, defendant attempted to argue that his second sentence to a longer term constituted multiple punishment in violation of the double jeopardy clause, but the court, in an opinion by Mr. Chief Justice FULLER rejected this contention and concluded, *inter alia,* that the plea of former jeopardy was unavailable where an illegal sentence had been reversed or vacated *at the request of the accused.* The court, however, took pains to distinguish *Matter of Lange* and observed, in dictum *(supra,* at pp 160-162):

"We repeat that this is not a case in which the court undertook to impose *in invitum* a second or additional sentence for the same offense, *or to substitute one sentence for another.* On the contrary, plaintiff in error availed himself of his right to have the first sentence annulled so that another sentence might be rendered. * * *

"[T]he plea of former jeopardy or of former conviction

---

6. The constitutionality of governmental appeals of otherwise valid sentences has also generated a number of law review articles, some of which have argued that the practice would be violative of the prohibition against double jeopardy (see, e.g., Spence, The Federal Criminal Code Reform Act of 1977 and Prosecutorial Appeal of Sentences: Justice or Double Jeopardy?, 37 Md L Rev 739; Note, Twice in Jeopardy: Prosecutorial Appeals of Sentences, 63 Va L Rev 325), while others have taken the position that the practice would be unobjectionable (see, e.g., Dunsky, The Constitutionality of Increasing Sentences on Appellate Review, 69 J Crim L & Criminology 19).

7. The Statute pursuant to which Murphy was originally sentenced was declared unconstitutional "so far as it related to past offenses" *(Murphy v Massachusetts,* 177 US 155, 156).

cannot be maintained because of service of part of a sentence, reversed or vacated on the prisoner's own application."

Thus, *Murphy* strongly implies that an appeal by the government aimed at increasing an otherwise valid sentence would run afoul of the double jeopardy clause.

Further evidence that governmental appeals of otherwise valid sentences would be violative of the constitutional prohibition against "multiple punishments" can be found in *United States v Benz* (282 US 304), wherein the Supreme Court was asked to assay the power of a District Court to *reduce* a sentence which it had previously imposed. In *Benz* the defendant had pleaded guilty to a charge of violating the National Prohibition Act and was originally sentenced to a term of imprisonment of 10 months. Subsequently, the defendant petitioned the District Court to reduce his sentence and the court responded by decreasing his term of imprisonment to six months. The government appealed and the following question was certified for review *(supra,* at p 306): "After a District Court of the United States has imposed a sentence of imprisonment upon a defendant in a criminal case, and after he has served a part of the sentence, has that court, during the term in which it was imposed, power to amend the sentence by shortening the term of imprisonment?" The court, in a unanimous opinion by Mr. Justice SUTHERLAND, answered the question in the affirmative *(supra,* at pp 306-307):

"The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be 'in the breast of the court' making them, and subject to be amended, modified, or vacated by that court. *Goddard v. Ordway,* 101 U. S. 745, 752. The rule is not confined to civil cases, but applies in criminal cases as well, provided the punishment be not augmented. *Ex parte Lange,* 18 Wall. 163, 167-174; *Basset v. United States,* 9 Wall. 38. In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation. Wharton, in Criminal Pl. and Pr., 9th ed., § 913, says: 'As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased.'

*"The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so*

*as to increase it, is not based upon the ground that the court
has lost control of the judgment in the latter case, but upon
the ground that to increase the penalty is to subject the
defendant to double punishment for the same offense in
violation of the Fifth Amendment to the Constitution, which
provides that no person shall 'be subject for the same offense
to be twice put in jeopardy of life or limb.'"* (Emphasis
supplied; cf. *Bozza v United States,* 330 US 160, *supra.)*

Later, in *Reid v Covert* (354 US 1, 37-38, n 68), the court again
observed (in dictum) that an increase in an otherwise valid
sentence would offend the prohibition against double jeopardy
when Mr. Justice BLACK, in discussing the applicability of the
Bill of Rights to military trials, stated for the plurality: "In
*Swaim v. United States,* 165 U. S. 553, this Court held that
the President or commanding officer had power to return a
case to a court-martial for an increase in sentence. *If the
double jeopardy provisions of the Fifth Amendment were
applicable such a practice would be unconstitutional"* (emphasis supplied).

In a similar vein, the First Circuit has recently held that a
Massachusetts statute permitting a reviewing court to increase the sentence *upon an appeal initiated by the defendant*
is not violative of the double jeopardy clause, but specifically
noted that "the Massachusetts procedure does not permit the
state to reopen the question of sentence on its own initiative.
*Were it to do so,"* the court observed, *"it would of course
violate the proscription against double jeopardy"* (*Walsh v
Picard,* 446 F2d 1209, 1211, cert den 407 US 921; emphasis
supplied; see, also, *Robinson v Warden, Maryland House of
Correction,* 455 F2d 1172 [CA 4th]; *United States v Coke,* 404
F2d 836, 845 [CA 2d]; *United States v Chiarella,* 214 F2d 838,
841 [CA 2d], cert den 348 US 902; *Oxman v United States,* 148
F2d 750, 753, [CCA 8th], cert den 325 US 887; *Frankel v
United States,* 131 F2d 756, 758 [CCA 6th]). More recently, the
Second Circuit has held in *United States v Di Francesco* (604
F2d 769, US app pending) that so much of section 3576 of title
18 of the United States Code as permitted the government to
appeal a "dangerous special offender" sentence (US Code, tit
18, § 3575) is violative of the protection against double jeopardy, where the statute provided that the review of the
sentence "shall include [a] review of whether the procedure
employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused", and

where it further provided that: "The court of appeals on review of the sentence may, after considering the record * * * affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after [a] hearing" (US Code, tit 18, § 3576).[8] The court opined (supra, at p 783): "The plain command of the fifth amendment is that no 'person [shall] be subject for the

8. Interestingly, few States have given their appellate courts any power to increase an otherwise valid sentence, and in every State in which the power has been imparted, its exercise has been made dependent upon the defendant's instituting an appeal to review the sentence (see Spence, The Federal Criminal Code Reform Act of 1977 and Prosecutorial Appeal of Sentences: Justice or Double Joepardy?, 37 Md L Rev 739, 769, n 155; see, also, United States v Di Francesco, 604 F2d 769, 781, n 15). There is no such statutory provision in the State of New York. The complete text of section 3576 of title 18 of the United States Code is set forth below.

"With respect to the imposition, correction, or reduction of a sentence after proceedings under section 3575 of this chapter, a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals. Any review of the sentence taken by the United States shall be taken at least five days before expiration of the time for taking a review of the sentence or appeal of the conviction by the defendant and shall be diligently prosecuted. The sentencing court may, with or without motion and notice, extend the time for taking a review of the sentence for a period not to exceed thirty days from the expiration of the time otherwise prescribed by law. The court shall not extend the time for taking a review of the sentence by the United States after the time has expired. A court extending the time for taking a review of the sentence by the United States shall extend the time for taking a review of the sentence or appeal of the conviction by the defendant for the same period. The taking of a review of the sentence by the United States shall be deemed the taking of a review of the sentence and appeal of the conviction by the defendant. Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing. Failure of the United States to take a review of the imposition of the sentence shall, upon review or reduction of the sentence, foreclose imposition of a sentence more severe than that previously imposed. Any withdrawal or dismissal of review of the sentence taken by the United States shall foreclose imposition of a sentence more severe than that reviewed but shall not otherwise foreclose the review of the sentence or the appeal of the conviction. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence. Any review of the sentence taken by the United States may be dismissed on a showing of abuse of the right of the United States to take such review."

same offense to be twice put in jeopardy of life or limb.' Although the phrase 'life or limb' suggests only the most serious of penalties, it has long been established that it encompasses all penalties which may be imposed in criminal proceedings. *Breed v. Jones,* 421 U. S. 519, 528 * * * (1975); *Ex parte Lange,* 85 U. S. (18 Wall.) 163, 170-73 * * * (1873). A defendant who has stood trial and been convicted and sentenced by the district court has been placed once in jeopardy. Had the position advocated by Mr. Justice Holmes, dissenting in *Kepner v. United States,* 195 U. S. 100, 134 * * * (1904), prevailed, the double jeopardy clause might present no barrier to an increased sentence on appeal. Justice Holmes argued that 'logically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried.' But the Supreme Court has never adopted this concept of 'continuing jeopardy,' which, although it might have simplified the matter of government appeals, *United States v. Scott,* 437 U. S. 82, 90 n 6 * * * (1978), would have greatly decreased the fifth amendment's protection against government oppression. The legislative history of § 3576 demonstrates that Congress was cognizant of possible constitutional objections to the provision, but that it concluded that *Kepner's* rejection of the continuing jeopardy concept should not apply to government appeal of a sentence rather than of an acquittal. S. Rep. No. 617, 91st Cong., 1st Sess. 95 (1969). We cannot perceive, however, how a defendant who, after being sentenced to several years' imprisonment by a district court, might be subject to imposition of a sentence of death upon a government appeal, would be any less placed twice in jeopardy of life or limb than was the defendant in *Kepner,* who, after acquittal in the court of first instance, was found guilty and sentenced to imprisonment for slightly less than two years upon appeal by the government. That § 3576 subjects a defendant 'merely' to a longer term of imprisonment, not to the actual loss of his life, is a difference of degree, not principle, from the example given, for the double jeopardy clause applies equally to all criminal penalties. See *supra* at 783. Under the statute the government, dissatisfied with final judgment in one court, seeks a more favorable result in another tribunal. Therefore, the conclusion appears inescapable that to subject a defendant to the risk of substitution of a greater sentence, upon an appeal by the government, is to place him a second time 'in jeopardy of life or limb.' "

In our view, the same considerations are equally applicable to proceedings brought pursuant to article 7 of the Family Court Act, with the only difference being one of degree rather than principle, i.e., the extent of the punishment which may be imposed.[9] Accordingly, we believe that to expose a respondent to the risk of a harsher disposition (i.e., penalty) upon an appeal brought by the petitioner in a juvenile delinquency proceeding is "to place him a second time 'in jeopardy of life or limb' " (*United States v Di Francesco,* 604 F2d 769, 783, *supra;* see, also, *State ex rel. C. B.,* 163 NJ Super 215, *supra).*[10]

Notably, the conclusion reached here does not conflict with the decision in *North Carolina v Pearce* (395 US 711, *supra),* as the court therein was presented with the question of whether the double jeopardy clause prohibits the imposition of a greater sentence upon the *retrial* of a defendant *who has succeeded in getting his first conviction reversed on appeal.* In answering this question in the negative, the court relied on *United States v Ball* (163 US 662) and *Stroud v United States* (251 US 15), which, taken together, stand for the proposition that the constitutional guarantee against double jeopardy imposes no limitation upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside, and that a corollary of the power to retry a defendant is the power to impose any legally authorized sentence upon his reconviction, without regard to whether it is greater or lesser than the sentence originally imposed (395 US, at p 720). In discussing *Pearce,* the Second Circuit, in *Di Francesco* (604 F2d 769, 786, *supra)* observed:

"Although various rationales have been advanced and rejected for the rule that a defendant may be retried after reversal of an original conviction, see *Burks v. United States,* 437 U.S. 1, 15 n. 9 * * * (1978), the Court most recently adopted, in its unanimous opinion in *Burks, id.* at 15, * * *

---

**9.** In this regard, it is important to note the increased penalties available for juveniles found to have committed "designated felony acts" under the Juvenile Justice Reform Act of 1976 (see Family Ct Act, §§ 712, 753-a, as amd by L 1976, ch 878, eff Feb. 1, 1977).

**10.** That it might be permissible to require a defendant or respondent to consent to a review of his sentence as a condition to the exercise of his right to appeal (cf. *Walsh v Picard,* 446 F2d 1209), need not concern us here, as respondent did *not* choose to appeal and the statute under review imposes no such condition. As the Second Circuit observed in *United States v Di Francesco* (604 F2d 769, 786-787, n 25): "Considerations of due process would require that a [person] be informed of such a consequence of his decision to appeal."

the justification offered in *United States v. Tateo,* 377 U.S. 463, 466 * * * (1964): 'It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.'

"This rationale, however, does not fully explain the result in *Pearce* since a defendant would not be granted immunity from punishment if the sentence on retrial were limited to that imposed at the first trial. Rather, *Pearce* depends too on a second line of reasoning, that the double jeopardy protection simply has no relevance where 'the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean.' *Pearce, supra,* 395 U.S. at 721 * * * This outcome does not result from any 'waiver' of double jeopardy protections, as was suggested in *Trono v. United States,* 199 U.S. 521, 533 * * * (1905), and rejected in *Green v. United States, supra,* 355 U.S. at 191-92 * * * but instead is compelled by the fact that 'the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice.' Scott, supra, 437 U.S. at 99" (emphasis supplied; see *Murphy v Massachusetts,* 177 US 155, 162, *supra;* cf. *Bozza v United States,* 330 US 160, 166 *supra).*

In our case, however (as in *Di Francesco),* neither factor which militated against the application of the double jeopardy clause to the resentence in *Pearce* is present. Thus, there is no danger that the respondent will go unpunished, as he has already served his probationary term. Moreover, there is no basis on the present record for concluding that the respondent has "voluntarily chosen" to subject himself to jeopardy for a second time. Unlike the defendant in *Di Francesco,* he did not appeal. The conclusion is therefore inescapable that the respondent at bar faces the risk of augmented punishment "solely because the government desires a second chance to obtain a sentence satisfactory to it" *(United States v Di Francesco,* at p 786). This it may not do. While we "do not deny the existence of legitimate governmental interests that might be served by allowing the government to appeal a sentence, *e.g.,* improved uniformity in sentencing * * * such interests must be pursued in alternative ways that do not conflict with the fifth amendment's guarantee against double jeopardy. '[W]here [,as here,] the Double Jeopardy Clause is applicable, its sweep is absolute. There are no equities to be

balanced, for the Clause has declared a constitutional policy, based on grounds which are not open to judicial examination.' *Burks v. United States, supra,* 437 U.S. at 11 n. 6" *(United States v Di Francesco,* at p 787). In our opinion, to require respondent to face for a second time the full range of penalties which the law prescribes would violate that constitutional policy.

For all of the foregoing reasons, the appeal must be dismissed.

LAZER, J. P., RABIN and O'CONNOR, JJ., concur.

Appeal from an order of the Family Court, Rockland County, dated September 14, 1978, dismissed, without costs or disbursements.