*858 OPINION OF THE COURT
Edward A. Sheridan, J.
An indictment has been filed accusing the defendant, Addison L. Holloway, of sodomy in the first degree (Penal Law § 130.50 [1]). The charge is that the defendant, then 14 years of age, forcibly sodomized a four-year-old female victim during the Christmas holiday in 1995.
Claiming that the present prosecution in superior court is barred by a prior juvenile delinquency adjudication in the Family Court, the defendant now moves to dismiss the indictment upon statutory and constitutional principles of previous prosecution and former jeopardy (US Const 5th, 14th Amends; NY Const, art I, § 6; CPL art 40).
The factual and procedural context is not in dispute and may be briefly stated.
This indictment was filed on August 6, 1996 in the County Court, Rensselaer County, accusing the defendant of sodomy in the first degree, a crime for which, as a 14 year old, he could be held criminally responsible as a juvenile offender (Penal Law § 10.00 [18]; § 30.00 [1], [2]). The indictment alleges that sometime around Christmas of 1995, at 23 Thirteenth Street, Troy, Rensselaer County, the defendant engaged in deviate sexual intercourse with another person by forcible compulsion in that he forcibly put his penis in the mouth of a girl whose date of birth is April 24, 1991.
On August 9, 1996, the defendant was arraigned before the Honorable Patrick J. McGrath, Judge of the County Court, on the indictment. The defendant entered a plea of not guilty, was continued on posted bail in the amount of $2,500, and the matter was adjourned for all purposes.
On February 20, 1996, some 51/2 months prior to the filing of the instant indictment, a designated Family Court Act petition, docket No. E-0002-96, had been filed in the Family Court, Rensselaer County, charging the defendant with the offense of sodomy in the first degree, a designated class B violent felony offense, in violation of Penal Law § 130.50 (1). The petition alleged, inter alia, that during December 1995 or January 1996, the defendant engaged in deviate sexual contact with another person who was less than 11 years old, specifically that the defendant placed his penis into the mouth of Ariel Stickelmeyer, whose date of birth is April 24, 1991.
On April 2, 1996, with his Law Guardian, Paul W. Martineau, Jr., the defendant appeared before the Family Court, Rens *859 selaer County, for a fact-finding hearing on the charge of sodomy in the first degree. The defendant entered an admission on the record to an attempt to that charge, waived the dispositional hearing, and was placed with the New York State Division for Youth for a term of 18 months pursuant to article 3 of the Family Court Act.[1]
CONCLUSIONS OF LAW
There is no dispute, indeed, that the conduct alleged in the instant indictment is the very same conduct involving the same victim and the same time frame as was alleged in the petition and finally adjudicated in the Family Court.
The issue is, then, whether statutory and constitutional principles regarding previous prosecution and former jeopardy would now bar prosecution of the instant indictment.
Generally, statutes relating to jurisdiction of courts over juvenile delinquents and providing for the procedure in such courts have been characterized as paternal and benevolent. The fundamental philosophy of the juvenile court laws was that a delinquent child is to be considered and treated not as a criminal, but as a person requiring care, education and protection. Thus, proceedings in juvenile courts were originally held to be noncriminal in nature, and therefore none of the constitutional guarantees afforded adults charged with a crime were deemed applicable (see, 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children, § 34). However, recognizing that there was a gap between the originally benign conception of the juvenile court system and its realities, and eschewing the civil label of convenience attached to such proceedings in the past, the United States Supreme Court in In re Gault (387 US 1) held that certain constitutional guarantees associated with traditional criminal prosecution, including notice of charges, right to counsel, right to confrontation and the privilege against self-incrimination were applicable in juvenile delinquency proceedings which might lead to commitment in a State institution.
*860 With respect to the applicability of former prosecution and double jeopardy principles in juvenile court proceedings, the early and traditional view was that such proceedings, being noncriminal and nonpenal, did not involve any jeopardy, and hence, could not give rise to a bar (47 Am Jur 2d, op. cit., § 34). That, however, was resolved as a matter of Federal constitutional law by the United States Supreme Court in 1975 when it decided Breed v Jones (421 US 519), holding that jeopardy does attach within the meaning of the Fifth Amendment, as applicable to the States through the Fourteenth Amendment, in an adjudicatory delinquency proceeding in juvenile court.
In the Breed case (supra) the Supreme Court held that the prosecution of the respondent minor in State superior court for the crime of robbery after the case had been transferred to that court following an adjudicatory proceeding in the Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment. There, the Juvenile Court petition alleged that a 17 year old had committed acts which if done by an adult would constitute the crime of robbery. In a subsequent adjudicatory proceeding, the Juvenile Court found the allegations of the petition were true. At the dispositional hearing, the Juvenile Court later determined that the youth was unfit for treatment as a juvenile and ordered that he be prosecuted as an adult in superior court.
The Supreme Court observed that there was no dispute that the respondent juvenile was put in jeopardy by the proceedings in superior court and that the petition filed in the Juvenile Court and the information filed in the superior court related to the very same offense within the meaning of the constitutional prohibition of double jeopardy. The Court concluded that it was simply too late to say that a juvenile was not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violated a criminal law and whose potential consequences included both the stigma inherent in such a determination and a significant deprivation of liberty. The Court went on to reject the argument that the respondent’s transfer from Juvenile Court, where there had been no placement or punishment, to superior court involved merely "continuing jeopardy” and did not subject him to double jeopardy. The Court emphasized that it is not only the risk of twice being punished but the burden of twice defending oneself that the Constitution proscribes. The Court also rejected the argument that the flexibility and informality of Juvenile Court *861 proceedings would be sacrificed and excessive administrative burdens imposed on the Juvenile Court system by applying double jeopardy principles in that context. Upon remand, the United States Court of Appeals ordered that the District Court issue a writ of habeas corpus directing the State court to vacate the adult conviction of the respondent.
Several New York decisions had anticipated the Supreme Court’s holding in Breed (supra), and held that continued or renewed proceedings in Family Court regarding the same underlying conduct were barred by Federal and State constitutional prohibitions against double jeopardy. For example, in Matter of Fonseca v Judges of Family Ct. (59 Misc 2d 492), it was held that the Judges of the Family Court were barred by Federal and State constitutional prohibitions against double jeopardy from reconducting a fact-finding hearing as to the petitioner’s juvenile delinquency, based on allegations that certain acts of the petitioner, if done by an adult, would constitute the crime of unauthorized use of a vehicle. The court concluded that the petitioner was put in jeopardy when the initial fact-finding hearing was commenced and evidence introduced, and that the court in such hearing was not justified in declaring a mistrial after it was established that a key prosecution witness was missing.
Similarly, in People ex rel. Thomas v Judges of Family Ct. (85 Misc 2d 569), the court granted a juvenile’s petition for a writ prohibiting the Judges of the Family Court from reopening a fact-finding hearing regarding the adjudication of the juvenile as a delinquent, or retrying the juvenile on any other complaint based on the same facts relating to a criminal assault. The court held that jeopardy attached against the juvenile when a witness was sworn and testified in the fact-finding hearing whose object was to determine whether the juvenile had committed an assault, with the possibility of depriving the juvenile of his liberty for as long as three years. The court went on to state that a reopening of the hearing or a retrying of the juvenile would subject him to double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution and would be contrary to the provisions of the New York Constitution where the mistrial declared in the fact-finding hearing over the objections of the juvenile’s Law Guardian was not a manifest necessity or necessary to prevent the ends of justice from being defeated.
Effective in 1985, this principle was ultimately adopted in the Family Court Act in section 303.2 which expressly made *862 applicable in Family Court proceedings the provisions of CPL article 40 making a previous prosecution a bar to subsequent relitigation of the same conduct or transaction.[2]
The New York decisions following the Breed case (supra) have been uniform in holding that the Double Jeopardy Clauses of the Federal and State Constitutions protect against a second prosecution for the same offense and are applicable to juvenile court proceedings (see, e.g., Matter of John P., 74 AD2d 403 [appeal of juvenile delinquency adjudication on the ground that the order of disposition was too lenient barred by prohibition against double jeopardy]; Matter of Frank K., 87 AD2d 1003 [juvenile placed in jeopardy twice when delinquency fact-finding hearing was reopened to receive excluded evidence after order of dismissal had been entered]; Matter of James B., 92 AD2d 937 [Double Jeopardy Clause protects against second prosecution for same offense after conviction and is applicable to juvenile court proceedings]; Matter of Endrell O., 97 AD2d 795 [double jeopardy rule, applicable in juvenile proceedings, prohibits retrial after order of dismissal constituting adjudication on merits]; see also, Matter of Brian S., 151 AD2d 577; Matter of Kevin B., 128 AD2d 63, affd sub nom. Matter of Timothy L., 71 NY2d 835; see also, Matter of Jose R., 83 NY2d 388).
Family Court Act § 303.2, incorporating by reference CPL article 40, makes clear that the CPL principles of previous prosecution would also preclude successive adjudicatory proceedings in the Family Court for the same conduct and transaction. Moreover, the fair import of that incorporation by reference is also that a Family Court juvenile delinquency adjudication and disposition entered upon an admission to the petition would constitute a "[previous prosecution” (CPL 40.30) for purposes of applying the expansive former jeopardy principles of that article to a subsequent criminal prosecution of the same underlying conduct.[3] That is to say, for purposes of CPL article .40, the petition should be deemed an "accusatory instrument” and the petitioner’s admission thereto a "convic *863 tion” so as to bar statutorily a subsequent criminal prosecution of the same conduct (see, CPL 1.20 [1], [13]; 40.30 [1]; cf., Matter of Booth v Clary, 83 NY2d 675, 679-680; but see, People v Vasquez, 89 NY2d 521, 533). This, of course, underscores the need in individual cases for close coordination between the superior court prosecuting authority and the Family Court presentment agency to assure an appropriate disposition, in the appropriate forum consistent with the over-all public interest (Family Ct Act § 301.1).
Accordingly, the defendant’s motion to dismiss the indictment upon statutory and constitutional grounds of previous prosecution and double jeopardy is granted and the indictment is dismissed.

. On March 28,1996, five days before appearing in Family Court, the defendant, together with his counsel, Assistant Public Defender Philip J. Landry III, had appeared in the County Court for a superior court information conference with respect to the matter then also pending in Family Court. A proposed disposition was discussed that would have resulted in an indeterminate term of imprisonment for a maximum term of six years and a minimum term of two years. During the plea allocution, the defendant became emotional and was unable to complete the allocution and the superior court information proceedings were terminated. The instant indictment then ensued.

. Generally, article 40 sets forth the State statutory protection against double jeopardy in the context of exposure to multiple criminal presentations: It restates, in statutory form, the pure and simple constitutional prohibition against being twice prosecuted "for the same offense” (US Const 5th Amend; NY Const, art I, § 6) and sets forth a broader statutory limitation upon separate prosecutions for multiple crimes committed by a single act or during a single criminal transaction. (CPL 40.10, 40.20.)

. CPL 40.30 (1) provides in part that:
*863 "a person 'is prosecuted’ for an offense * * * when he is charged therewith by an accusatory instrument filed in a court of this state * * * and when the action * * *
"(a) Terminates in a conviction upon a plea of guilty”.
"Accusatory instrument” means an indictment, an information, a simplified information, a prosecutor’s information, a superior court information, a misdemeanor complaint or a felony complaint (CPL 1.20 [1]).
"Conviction” means the entry of a plea of guilty to, or a verdict of guilty upon an accusatory instrument other than a felony complaint, or to one or more counts thereof (CPL 1.20 [13]).