Jasen, J.
The question in each of these cases, argued together on appeal, is whether there was sufficient evidence to support the conclusion that the defendants were possessed of “ any tool, instrument or other article adapted, designed or commonly used for committing or facilitating * * * offenses involving larceny by physical taking * * * under circumstances evincing an intent to use * * * the same in the commission of an offense of such character.” (Penal Law, § 140.35, possession of burglar’s tools.)
PEOPLE V. BORRERO
At about 5:55 p.m., on March 18, 1968, Detective John Reilly, a 13-year veteran of the New York City Police Department, noticed defendant Borrero standing in the street alongside a parked automobile, prying on the vent window of the vehicle with a screwdriver. After the officer had observed Borrero continue his labor for about two or three minutes, another man walked over toward Borrero and appeared to say a few words. Following this, Borrero placed the screwdriver beneath his jacket, turned away from the auto and began walking up the street. At this point Detective Reilly stopped him, identified himself as a policeman, and informed Borrero he was under arrest. Thereupon, Borrero removed his right hand from his jacket pocket and threw a glassine envelope in the direction of his mouth. The envelope struck the side of his face, falling to the ground, and Borrero started to run away. The officer apprehended the defendant and retrieved the glassine envelope, which was found to contain heroin. Detective Reilly testified that he had previously made five or six arrests for possession of burglar’s tools, a majority of which have led to convictions. He also said that when a screwdriver is used on a vent window, *433 as he said defendant was using it, the effect is to break the vent window or shear off the lock on the vent window, thereby affording entrance into the vehicle. The People offered no other evidence.
Borrero testified at trial and disputed Detective Reilly’s testimony. Defendant admitted the screwdriver was his, but claimed that he used it in his work as a carpenter. He further testified that on the afternoon in question, he and one Morales were walking to the store to purchase milk for Morales’ child when Detective Reilly approached him and said he was under arrest. When he asked why he was being arrested, Reilly grabbed him and began to shake him. Defendant also stated that after Reilly subdued him, the officer .showed him a glassine envelope and said, “ This is yours.” Defendant denied that he had a glassine envelope in his possession, or that he attempted to gain entry to a parked car.
Borrero was convicted of possession of burglar’s tools and possession of narcotics, and sentenced to two concurrent six-month terms in prison. The Appellate Term reversed on the law as to the burglar’s tools charge, holding that in the absence of any proof of ownership of the car, the requisite showing of intent to use the screwdriver unlawfully was not established. The court was of the opinion that absent such proof, the conduct of the defendant was as consistent with innocence as with guilt.
PEOPLE V. LUGO
On the morning of October 20, 1968, Patrolman William Cocodrilli of the New York City Police Department was assigned to deal with larcenies of automobiles in the 7th Precinct. In the vicinity of Essex and Broome Streets, he noticed a parked automobile in which were several packages, including a box which had the words “ Oneida Silverware ” on it. Cocodrilli kept the car under observation for approximately half an hour.
At about 11:30 a.m., the officer observed defendant Lugo and one Rolden walking along Essex Street looking into parked cars. When they came to the car described above, they had a brief discussion and then defendant Lugo inserted a wire into the window of the right front door of the car. Meanwhile, Rolden *434 walked to the front of the car and stood watch, looking up and down the street. They were so occupied for “ a couple of minutes ” when a man and a woman, carrying packages, approached the car. At this point the defendant removed the wire from the window, folded it, and put it in his pocket. He and his cohort then walked away. The couple arrived at the car, unlocked it, and entered the vehicle. The officer then followed Lugo and Bolden, arrested them, and recovered a wire coat hanger from Lugo’s pocket. He returned the suspects to the car the couple entered and had a conversation with the driver, who gave the officer his name. However, at the trial, the People did not offer any direct evidence as to the ownership of the car.
After making the" arrest, Patrolman Cocodrilli advised both defendant Lugo and his companion of their constitutional rights. While on the way to arraignment, defendant Lugo said several times, “ I had the tool, let him go ”, and his colleague added, “ Well, let me go, he [Lugo] had the tool.”
Defendant did not testify at his trial. He was found guilty of possession of burglar’s tools and sentenced to nine months’ imprisonment. The Appellate Term, First Department, unanimously affirmed, without opinion.
In each of these cases, as noted before, there is involved an interpretation of section 140.35 of the Penal Law, to wit: whether the circumstantial evidence was sufficient to support the conclusion that the defendants, beyond a reasonable doubt, possessed burglar’s tools “under circumstances evincing an intent to use * * * the same in the commission of an offense ”.
Of course, such things as screwdrivers or lengths of wire are not in and of themselves ‘ ‘ burglar’s tools ’ ’ and no presumption of intent may arise from mere possession of such instruments. (People v. Spillman, 309 N. Y. 295.) However, an intent to possess such instruments for an unlawful purpose may be established by circumstantial evidence. (Cf. People v. Heusner, 26 N Y 2d 776.)
In testing the sufficiency of circumstantial evidence, this court has often said that (a) the hypothesis of guilt should “ flow naturally from the facts proved, and be consistent with them all and (b) the facts proved must all be consistent with guilt *435 and inconsistent with innocence and exclude “to a moral certainty ” every reasonable hypothesis but guilt. (E.g., People v. Bennett, 49 N. Y. 137, 144; People v. Razezicz, 206 N. Y. 249, 272; People v. Eckert, 2 N Y 2d 126; People v. Yazum, 13 N Y 2d 302.) This test, however, at times, tends to be a confusing form of words (see Richardson, Evidence, [9th ed.], § 152) and should not be a substitute for reasoned thought. As Judge Bergak, writing for the court in People v. Wachowicz (22 N Y 2d 369), noted: “In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.” (Id., at p. 372.)
In People v. Diaz (23 N Y 2d 811), we unanimously affirmed a conviction for possession of burglar’s tools where, at 9:40 p.m., the defendant had been observed walking along the street with another, peering into 15 or 20 parked vehicles, and had stopped alongside one car for about 30 or 40 seconds, while possessed of a screwdriver wrapped in a newspaper under his arm.
Similarly, in People v. Smith (23 N Y 2d 955), we upheld a burglar’s tools conviction where, at 4:00 a.m., the defendant was observed walking along the street trying the doors of parked cars and when arrested was found to be in possession of two screwdrivers.
In both Diaz and Smith, the defendants argued that the evidence of the facts and circumstances surrounding their arrest generally failed to evince the intent to commit a larcenous offense. The defendants herein, who were “ caught in the act ” so to speak, make a slightly more sophisticated argument in claiming lack of proof of intent. In substance, they contend that an individual may not be prosecuted for breaking into his own car, and that absent any direct proof by the People as to ownership of the automobiles involved in these cases, the circumstantial evidence will not support the conclusion that these defendants possessed tools under circumstances evincing an intent to use the same in the commission of a larcenous offense. We disagree.
Generally speaking, the owner of the subject automobile would not be arrested, much less prosecuted, for breaking into his own car, since he would be able to produce the certificate of *436 registration for the vehicle. However, in spite of this, a criminal defendant is presumed to he innocent, and the burden of proving his guilt (here based upon lack of ownership) beyond a reasonable doubt rests upon the People. (Code Grim. Pro., § 389.) Yet, while the People have this burden and while it would he preferable practice in cases such as these for the prosecution to introduce direct proof of another’s ownership of the subject vehicle, failure to do so is not necessarily fatal to the People’s case. For instance, in the situations before us, the defendants’ lack of ownership may reasonably he inferred from the surrounding circumstances.
In the Borrero case, the defendant was observed prying on the vent window of an automobile in a manner which would break the window or shear off the window lock, when another individual approached the defendant and said a few words. Thereupon, the defendant put the screwdriver under his jacket and began to walk away. We hold that these facts “ according to common human experience would lead a reasonable man ” to conclude that the defendant was breaking into another person’s ear, and were sufficient evidence to establish a prima facie case against the defendant. It might he argued that conceivably the car belonged to defendant Borrero and that he had locked himself out. However, this is hardly a reasonable hypothesis of innocence, for common experience would suggest the owner of the car would have a locksmith or mechanic open the car, rather than pay the cost of a new window and its installation. Moreover, such a hypothesis hardly comports with the conduct of the defendant who suddenly stopped his labors after a few words from another person, secreted the screwdriver under his jacket and departed the scene.
Likewise, in the Lugo case, the circumstantial evidence of the defendant’s lack of ownership is sufficient to support conviction. Here, the defendant and his companion were observed looking into parked cars and had attempted to enter one which contained merchandise, only to flee upon the approach of the individuals who had the keys to the car. It is ludicrous to say that these facts are as consistent with the defendant’s innocence as not.
Accordingly, the judgment in Lugo should he affirmed. In Borrero, the judgment of the Appellate Term, insofar as appealed from, should he reversed and the case remitted to the *437 Appellate Term for determination of questions of fact, if any, raised in that court. (Code Grim. Pro., §§ 543-a, 543-b; Cohen and Karger, Powers of the New York Court of Appeals, pp. 771-773.)
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Brietel and Gibson concur.
In People v. Borrero: Judgment, insofar as appealed from, reversed and case remitted to the Appellate Term for further proceedings in accordance with the opinion herein.
In People v. Lugo: Judgment affirmed.