THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUCIA KENNEDY, Appellant.—Motion by defendant for reargument of an order of this court dated August 1, 1977 *(People v Kennedy*, 59 AD2d 539), which determined an appeal from a judgment of the Supreme Court, Queens County, rendered April 16, 1975. Motion granted and, upon reargument, the decision and order of this court, both dated August 1, 1977, are vacated and recalled and the following substituted decision is rendered: Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered April 16, 1975, convicting him of murder, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, indictment dismissed, and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. On April 3, 1974, at approximately 6:00 P.M., Bernard Jackson was shot to death. The testimony of the People's witnesses indicated that defendant and Bernard Jackson had been seen together earlier that day, fighting and arguing in a playground. Jackson was overheard commenting about defendant's pistol. Subsequently, defendant was observed walking with Jackson on the street, on their way to the scene of the crime. Defendant held a pistol in one hand and had Jackson under restraint. Several other members of defendant's youth gang were present. Within a few minutes, a shot was heard and defendant was observed fleeing from the scene. Were this the only proof, we would sustain the jury's finding of guilt, absent prejudicial error. However, Detective Sealy, a witness for the People, testified that after he arrested defendant he conducted an investigation. In the course thereof, he arrested a young man by the name of Wilfredo O., who was 15 years old. Wilfredo told the detective that he had killed Jackson. Sealy further testified that to his knowledge Wilfredo had pleaded guilty to manslaughter in the Family Court and had been "sentenced to eighteen months". In addition, Police Officer Walker testified, on cross-examination, that Wilfredo told him that he had shot Jackson. Wilfredo assisted Officer Walker in recovering the murder weapon. The circumstantial evidence against the defendant would appear to be overwhelming, but in view of the admission of guilt by Wilfredo, the evidence does not exclude the hypothesis that it was he, and not the defendant, who shot the deceased. On the contrary, upon all the evidence, we are constrained to hold that the proof did not exclude to a moral certainty every other hypothesis but that the defendant committed the crime (see *People v Borrero*, 26 NY2d 430, 434-435). Consequently, the evidence adduced at the trial, taken as a whole, was not legally sufficient to establish defendant's guilt. The judgment must therefore be reversed and the indictment dismissed (see CPL 470.20, subd 2; *People v Fitzpatrick*, 40 NY2d 44). Hopkins, J. P., Rabin and O'Connor, JJ., concur; Martuscello, J.,

dissents and votes to affirm the judgment, with the following memorandum, in which Hawkins, J., concurs: On April 3, 1974, at about 6:00 P.M., Bernard Jackson was shot and killed behind a supermarket at 119th Avenue and Sutphin Boulevard, Queens County. The following day defendant was arrested for the crime. The autopsy report revealed that death was caused by a single bullet wound in the right temple and that a small amount of gunpowder streaking was present at the entrance site of the bullet wound. A small caliber bullet was recovered from the deceased's head and was delivered to the Ballistics Division of the New York City Police Department. The murder weapon was not recovered until April 19, 1974. On that date Officer Floyd Walker, Youth Gang Coordinator, New York City Police Department, met with some youths who were members of a gang known as the Savage Skulls, the gang to which defendant belonged. After speaking with them as to the whereabouts of the murder weapon, he proceeded to a lot in the vicinity of the supermarket and found a .25 caliber pistol, which was delivered to the Ballistics Division. The pistol was test-fired and found to be operable. Comparison tests indicated that the bullet recovered during the autopsy had been discharged from that pistol. The pistol was admitted into evidence without any objection. Mark Robinson, a member of the Savage Skulls, testified that several weeks before the shooting, the defendant told him that Jackson had beaten up the defendant's girlfriend and that he was going to kill Jackson. Robinson stated that the .25 caliber pistol received in evidence belonged to the defendant and that he had seen it on more than one occasion in defendant's possession. Mrs. Sandra Simon testified that she had known the defendant and the deceased for several years. On April 3, 1974, between 5:00 and 6:00 P.M., she was in a park about five blocks from the scene of the homicide when she saw the defendant and the deceased walk past her at a distance of three feet. She observed defendant hitting Jackson about the face and chest and holding him by the collar. She heard Jackson say: "Let me go. It wasn't me. Stop hitting me. You and that damn gun." Sheldon Dobie testified that he was a member of the Savage Skulls. At about 6:00 P.M. on April 3, 1974 he was standing on a corner about a block away from the scene of the homicide. He saw the defendant and the deceased walk past him with two other boys. Defendant had one hand on Jackson's shoulder and held a pistol in the other hand. They proceeded toward the scene of the homicide. About one minute later, Dobie observed six other males—members of the Savage Skulls—pass him. In about another minute, Dobie heard a sound "like a gun shot". Immediately thereafter he saw the defendant and "the rest of the boys" run by. As defendant went by him, Dobie did not see a gun in his hand. He identified the .25 caliber pistol as the gun defendant had in his hand while holding the victim. Detective Leroy Sealy, of the Homicide Bureau, testified that on April 3, 1974 he arrived at the scene of the crime after 6:00 P.M. He observed a young man lying on the ground and bleeding from the head. On the following day Sealy placed the defendant under arrest for murder. On cross-examination Detective Sealy was permitted to testify, over the People's objection, that one Wilfredo O., 15 years of age, told him that he had killed Jackson. Detective Sealy also testified that Wilfredo was charged in the Family Court with having killed Jackson and, to the best of Sealy's knowledge, he pleaded guilty to manslaughter and was sentenced to a term of 18 months, to be served at the Goshen Center for Boys. It appeared that an order was obtained for the production of Wilfredo to testify in this case, but he had been released from Goshen and could not be found at the time of the trial. Defendant did not testify. This appeal raises an issue of whether the

circumstantial evidence offered at the trial was sufficient to establish defendant's guilt. For a conviction based on circumstantial evidence to stand, "the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence" *(People v Benziger,* 36 NY2d 29, 32). In my view, notwithstanding the testimony concerning Wilfredo, the proof did exclude to a moral certainty every other hypothesis but that the defendant committed the crime. Wilfredo's declaration that he shot Bernard Jackson created a question of fact for the jurors. Their obvious disbelief of Wilfredo's declaration is not unreasonable in view of the fact that no one placed him at the scene of the crime; nor is there any other evidence connecting him with the crime. Dobie testified that he knew Wilfredo and did not see him at the time of the shooting. In addition, the lack of corroboration of Wilfredo's statement makes it doubtful that it should have been admitted under the declaration against penal interest exception to the hearsay rule. (See *Donnelly v United States,* 228 US 243, 277 [dissenting opn of Mr. Justice Holmes]; *People v Riccardi,* 73 Misc 2d 19, affd 40 AD2d 1083; cf. *People v Spriggs,* 36 Cal Rptr 841; Richardson, Evidence [Prince, 10th ed], § 260, p 228; Fine, Declarations Against Penal Interest In New York: Carte Blanche?, 21 Syracuse L Rev, 1095, 1104, 1110, 1130; Fisch, NY Evidence [2d ed], § 899.) On the other hand, the People's unimpeached evidence against the defendant established his motive, placed him at the scene of the crime at the time of the shooting, established that he owned the murder weapon and clearly demonstrated his flight from the scene. The evidence presented was certainly sufficient to allow the jury to find beyond a reasonable doubt that the defendant shot the decedent (cf. *People v Lagana,* 36 NY2d 71, 73-74).