*96 OPINION OF THE COURT
Anthony P. Savarese, J.
The defendant is charged with theft of services under Penal Law § 165.15 (4), the information, in pertinent part, alleging:
"Detective Sam Femminello of DAOSK, Shield 781, being duly sworn, deposes and says that on or about the date of May 22, 1984 at 102-05 32nd Avenue, Corona, County of Queens, State of New York, the defendant committed the offenses of: Penal Law § 165.15 (4), Theft of Services, under the following circumstances.
"Deponent states based on deponent’s own observations that at the above mentioned date, time and place, the defendant, with intent to avoid payment himself, or for another person, of a lawful charge for a telecommunications service, to wit: telecommunications for which there is provided for a charge or compensation, he obtained or attempted to obtain such service for himself or another person, or avoided or attempted to avoid payment for such service.
"In that the defendant acted as follows:
"In that defendant did sell to deponent for $75. a decoding, descrambling and/or converting unit which intercepts and decodes over the air encoded television signals broadcast by Wometco Home Theatre, Inc. with intent to avoid payment to Wometco Home Theatre, Inc. of the lawful charge of such television signals.”
After trial before me without a jury, and based upon all of the credible evidence adduced, I find the following facts:
Winetco Home Theatre, Inc. (hereafter referred to as WHTI or WWHT) was in the business of providing television services for a fee through the broadcasting of encoded television signals. The company employed a private investigator to investigate unauthorized sales of decoder instruments modified to permit the unauthorized reception of encoded television signals broadcast by WWHT. The investigation was pursued with the cooperation of the office of the Kings County District Attorney.
In the course of the investigation, as part of a prearranged undercover operation, one Henry Ohland, employed by the private investigator, and Detective Sam Femminello of the Brooklyn District Attorney’s squad, met with the defendant in an old firehouse being used as a "sort of warehouse,” in Corona, Queens. Ohland introduced Femminello to the defen *97 dant as a prospective purchaser of a large number of modified decoder "boxes” which the defendant was offering for sale.
During the negotiations, Ohland and Femminello informed the defendant that they sought the decoders for use outside of the State of New York. The defendant represented to them that the decoders, if modified, could pick up and unscramble channel 67’s encoded signals.
Channel 67 was one of several channels used by WWHT to broadcast encoded television signals to subscribers primarily in southern Connecticut and Long Island.
Femminello asked the defendant if he could purchase one of the decoders to determine if it would perform as represented. The defendant produced a decoder which he said had been modified to unscramble and receive in New York signals broadcast over channel 67. Femminello thereupon purchased the modified decoder from the defendant for the negotiated price of $75. It is clear that neither Femminello nor Ohland intended to use it for unauthorized interceptions of channel 67’s signals; nor did they represent otherwise to the defendant.
The decoder was tested and found to perform as represented as to channel 67; it could also be used as a channel frequency converter to receive uncoded television signals broadcast for the use of the general public.
Joseph Giardina was called as a witness for the People. He is a licensed engineer and vice-president in engineering of WWHT,[1] a television station owned by Wometco Broadcasting Company. He stated that WWHT is licensed by the Federal Communications Commission to operate channel 67 in the New York area. He described channel 67 as an over-the-air subscription television system that charged subscribers between $14 and $23.95 monthly for the use of a decoder and programmer.
Giardina further stated that only WWHT or its authorized dealers could sell or lease channel 67 decoders in the New York area, and that the defendant was not so authorized.
At the close of trial the defendant moved to dismiss the information upon the following grounds:
*98 (1) Penal Law § 165.15 (4) is unconstitutional, the telecommunication field having been preempted by the Federal Government pursuant to Federal statute (47 USC § 605).
(2) There could be no violation of Penal Law § 165.15 (4) in that the subject decoder was not contemplated to be used in the State of New York.
(3) There was failure of proof of guilt beyond a reasonable doubt, since there was no proof of intent by the defendant or any other person to avoid the lawful charge for television service acquired through the use of the decoder.
(4) There could be no violation of Penal Law § 165.15 (4), since the decoder could be used as a legal channel frequency converter.
(5) The proof was insufficient to establish more than an attempt to commit the crime of theft of services.
(6) In any event, a conviction could only be had for theft of services as a violation for failure to allege and prove the services to have exceeded the sum of $100.
PREEMPTION
Significant to the issue of preemption is the congressional intent with respect thereto (Jones v Rath Packing Co., 430 US 519, 525 [1977]; Kreshesky v Codd, 89 Misc 2d 439, 441 [1976]).
The Federal statute (47 USC § 605), as originally enacted, contained no express provisions with respect to Federal preemption of the telecommunication field. It was not until 1984 that Congress spoke to the issue by an amendment in language explicitly declaring congressional intent not to preempt the field at least insofar as the importation, sale, manufacture or distribution of equipment to intercept encoded television signals was concerned (see, e.g., Kreshesky v Codd, supra, at p 441). The text of the amendment follows: "Nothing in this subsection shall prevent any State, or political subdivision thereof, from enacting or enforcing any laws with respect to the importation, sale, manufacture, or distribution of equipment by any person with the intent of its use to assist in the interception or receipt of radio communications prohibited by subsection (a) of this section.”[2] (47 USC § 605 [d] [6].)
*99 The 1984 amendment, however, became effective subsequent to the date of purchase of the decoder here involved. It remains then to determine if the congressional intent so strongly articulated in the 1984 amendment may be imputed to Congress in passing the subject legislation in its original form.
It is an established rule of statutory construction that an amendment is a significant indicium of legislative intent in the passage of the prior statute. (McKinney’s Cons Laws of NY, Book 1, Statutes § 192, pp 355-356.)
Prior to the 1984 amendment, case law was to be found on both sides of the preemption issue. Federal preemption was found in cases involving the regulation of master antenna television systems (New York State Commn. on Cable Tel. v Federal Communications Commn., 669 F2d 58 [2d Cir 1982]), and price regulation of special pay cable television. (Brookhaven Cable TV v Kelly, 573 F2d 765 [2d Cir 1978], cert denied 441 US 904 [1979].)
On the other hand it was held that 47 USC § 605 did not preempt the States from enacting legislation to deter the theft of services in the telecommunication field. (See, e.g., Ciminelli v Cablevision, 583 F Supp 144, 158 [1984]; People v Patton, 147 Cal App 3d Supp 1, 194 Cal Rptr 759 [1983].)
It is clear then that the 1984 amendment was a curative act intended to resolve any doubt about the congressional intent not to preempt the States from enacting legislation to prevent the theft of services in the telecommunication field insofar as such legislation dealt with the importation, sale, manufacture or distribution of equipment to intercept encoded television signals.
Since the amendment was a curative act, it may be given retroactive effect (McKinney’s Cons Laws of NY, Book 1, Statutes § 54 [b]) and viewed as an expression of Congress on the issue of preemption as to the theft of services in the telecommunications field under 47 USC § 605 prior to the 1984 amendment.
In all events, the reasoning of the Ciminelli and Patton cases (supra) is persuasive. In Ciminelli it was explicitly held that 47 USC § 605, prior to the 1984 amendment, did not preempt the States from enacting such legislation as Penal Law § 165.15 (4). Further, in Patton, it was specifically held that the California statute, which was a theft of services law similar to the New York law here concerned, had not been *100 preempted by Federal statute 47 USC § 605. I concur in these decisions. They are strong precedents for a like holding in the instant case.
It follows then that Penal Law § 165.15 (4), insofar as it deals with decoders to be used for the unauthorized interception of encoded television signals, is not unconstitutional, and I so hold.
CONTEMPLATED USE IN THE STATE OF NEW YORK NOT AN ELEMENT OF THE CRIME
There is no substance to the contention that, absent proof of purchase of the decoder for use within the State of New York, the sale thereof does not violate the subject section. Penal Law § 165.15 (4) prohibits the sale under circumstances and for purposes specifically outlined therein. The sale is one element of the crime and it was completed in New York.
CPL 20.20, in pertinent part, provides as follows:
"a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed * * * by his own conduct * * * when:
"(1) Conduct occurred within this state sufficient to establish:
"(a) [a]n element of such offenses”.
New York thus had jurisdiction of this offense (see, e.g., People v Chaitin, 94 AD2d 705 [1983], affd 61 NY2d 683 [1984]; People v Botta, 100 AD2d 311 [1984]). Nor could the defendant escape this jurisdiction by a showing that the sale contemplated the use of the decoder in another State.
People v Reilly (49 App Div 218, affd 164 NY 600 [1900]) upheld a conviction in New York for possession of burglar’s tools in New York, the possession being with intent to commit a burglary in New Jersey. The court stated (People v Reilly, supra, at p 221): "Nor does there seem to be any merit in the contention that the defendant should be acquitted if his intention was to commit a crime without the State, because if carrying tools in this State, and an intention to use them are established, the crime is complete.”
By a parity of reasoning if the sale of the decoder in New York otherwise falls within all of the elements of the offense defined in Penal Law § 165.15 (4), it is of no consequence that the ultimate use of the decoder be outside of the State; the *101 crime was complete in New York. For this reason New York had jurisdiction.
Further, even were the decoder to be used outside of New York, it would have been capable of intercepting unauthorized television signals from channel 67 and thus to have perpetrated a theft of services from WWHT, a New York corporation, doing business in New York. (See, e.g., CPL 20.10 [4]; 20.20 [2] [b]; People v Puig, 85 Misc 2d 228, 233-235 [1976].) In these circumstances, the use of the decoder would have an effect within the State of New York, thus conferring jurisdiction on this State to enforce the subject section. (CPL 20.20 [2] [b].)
PROOF BEYOND A REASONABLE DOUBT
There was no direct proof that the defendant intended to avoid payment by himself or another person of the lawful charge for telecommunication service. Femminello did not state that he was purchasing the decoder for such purpose and the defense contends that the defendant could not be charged, therefore, with the intent to sell for such prohibited purpose.
An intent to avoid payment need not be established by direct or explicit evidence; it may be established by circumstantial evidence. (People v Borrero, 26 NY2d 430, 434 [1970].) Intent may be inferred from a defendant’s conduct and surrounding circumstances. (People v Bracey, 41 NY2d 296, 301 [1977].)
The test for the sufficiency of circumstantial evidence to establish intent is " 'whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inference asserted for the established facts.’ ” (People v Borrero, supra, at p 435;[3] People v Reyes, 126 Misc 2d 399, 400-401.)
The defendant seeks to cleanse himself of the pervasive stench that marked all phases of these negotiations; but he cannot escape the damning exchanges between himself and Femminello.
Here the defendant modified a decoder especially to permit the unauthorized interception of channel 67 signals; he then made an unauthorized sale of such modified decoder in an area where that signal was broadcast. Common human experi *102 ence permits of a reasonable inference that such sale was accompanied by the intent to avoid payment by another person of the lawful charge for reception of channel 67 service.
Further, Penal Law § 165.15 (4) creates a presumption that one who sells a decoder which permits the unauthorized reception of encoded television signals does so with the intent to avoid payment for another of the lawful charge for the telecommunication service involved. (See, People v Leyva, 38 NY2d 160 [1975].) Since the defendant offers no evidence to rebut this presumption it stands and is sufficient to establish the presumed fact beyond a reasonable doubt (see, People v Leyva, supra). The presumption would survive an attack for unconstitutionality because the presumed fact, intent to avoid payment, is more likely to flow from the unauthorized sale of the decoder. (Ulster County Ct. v Allen, 442 US 140, 165 [1979].)
I find, therefore, that intent to avoid lawful charges for telecommunication service was established here beyond a reasonable doubt.
EFFECT OF DECODER’S POTENTIAL FOR USE AS LEGAL FREQUENCY CONVERTER
The fact that the modified decoder could be used as a legal frequency converter as well as a decoder to receive unauthorized telecommunication signals from channel 67 does not absolve the defendant from any criminality occasioned by his violation of the terms of Penal Law § 165.15 (4). The potential for illegal use of the decoder was contemplated by the defendant and the sale was consummated of an instrument with the capability for use in violation of the subject section.
That the recorder could have been used for the legal reception of television signals is of no greater significance than if it were of sufficient bulk or weight to be usable as a doorjamb or boat ballast.
LEGAL OR FACTUAL IMPOSSIBILITY AS IT AFFECTS INTENT
The defendant contends further that "legal or factual impossibility” rendered him incapable of committing any more than an attempt to commit the crime charged since Femminello never intended to use the decoder to intercept channel *103 67 signals. This principle finds authority in a line of cases in which an undercover agent’s lack of intent renders it legally or factually impossible for the suspect with whom he is working to complete the contemplated criminal act (see, People v Trepanier, 84 AD2d 374 [1982]; People v Leichtweis, 59 AD2d 383 [1977]). Not so with the case at bar, however.
Where the statutory definition of a crime includes elements which are designated in the statute as attempts to do certain acts, there cannot be a prosecution for an attempt to commit such crime, but rather the crime is deemed committed merely if the proscribed acts are attempted. (People v Lynn, 115 Misc 2d 76 [1982].) " 'So long as the statute defines the crime as consisting in the attempt, the crime is committed if the attempt is made, regardless of whether it is successful’ ” (People v Schmidt, 76 Misc 2d 976, 978 [1974], quoting People v Jelke, 1 NY2d 321, 330 [1956]).
Penal Law § 165.15 (4) explicitly states that if a person avoids or attempts to avoid payment for telecommunication services by offering for sale an unauthorized decoder he is guilty of theft of services. The statute is violated merely by attempting to commit the proscribed act (see, e.g., People v Schmidt, supra). A charge of attempt will not therefore lie and a "legal or factual impossibility” to complete the act is of no significance in the circumstances here involved.
THE CHARGE — AN OFFENSE, NOT A CRIME
Penal Law § 165.15, in pertinent part, provides: "Theft of services is a class A misdemeanor, provided, however, that theft of cable television service having a value not in excess of one hundred dollars is a violation”.
The People urge that this case involves transmission of telecommunication signals by microwave, not cablevision, and hence the defendant can only be convicted of an A misdemeanor under the above-quoted paragraph. The defendant argues that the words "Cable Television” as used in that section of the statute includes transmission of television signals by microwave, and that since the People failed to establish the dollar value of the theft of services here involved the offense charged can only be a violation, not a misdemeanor.
No explanation is offered, or apparent, for treating telecommunication by wire differently from telecommunication by microwave or other conceivable scientific technique with respect to the seriousness of the action proscribed by the subject *104 statute. It is the value of the alleged theft of services that would appear to have inspired the two-tier classification of offense. Hence it becomes necessary to consider carefully the meaning of the words "cable television service” as herein used to assure an even handed application of the subject section.
It is a well-settled principle of statutory construction that a statute should be interpreted in such manner as to assure its application equally in all similar situations. (McKinney’s Cons Laws of NY, Book 1, Statutes § 147.) It is an equally well-established principle of statutory construction that a statute should be construed so as to avoid injustice. (McKinney’s Cons Laws of NY, Book 1, Statutes § 146.)
The evil sought to be contained by the provisions of Penal Law § 165.15 (4) is the theft of television signals. If interpreted as the People suggest, the words "cable television service” would treat differently one who steals television signals broadcast via cable and one who steals television signals broadcast via microwave. Absent any articulable, compelling reason for such discrimination, the statute so construed is applied unequally and works mischief and injustice.
Additionally, Penal Law article 155, which deals with larceny, contains a section 155.00 (9), which defines cable television. In pertinent part, it provides: " 'Cable television service’ means any and all services provided by or through the facilities of any cable television system or closed circuit coaxial cable communications system, or any microwave or similar transmission service used in connection with any cable television system or other similar closed circuit coaxial cable communications system” (emphasis supplied).
This definition is the only definition of cable television service to be found in the Penal Law. This definition contemplates the transmission of telecommunication signals by microwave, but inexplicably would appear to distinguish reception of the signal "in connection with any cable television system or other similar closed circuit coaxial cable communication system”. In the instant case reception is assured through a special antenna installed outside of the house or within the house and a decoder instrument. Again I find this distinction without substance and, for the reasons herein above discussed, unfair and unjust if literally applied.
The court therefore finds the words "Cable Television service” as herein used to include transmission of television signals by microwave. It follows that since no value was *105 established as to the service involved in the case defendant can only be found guilty of a violation.
CONCLUSION
After trial before me, without a jury, and based upon all of the credible evidence adduced, I find the defendant guilty of theft of services as a violation under Penal Law § 165.15 (4).

. Giardina corrected what appeared to be a confusion in the name and broadcasting initials of the aggrieved party. Wometco is the parent company. Winetco Home Theatre, Inc. (WHTI) is the service contract company and WWHT is the television station licensed to broadcast over channel 67 to subscribers under contract with Winetco Home Theatre, Inc.

. 47 USC § 605 previously had been held to encompass encoded television signals similar to those here involved. (See, e.g., Movie Sys. v Heller, 710 F2d 492 [8th Cir 1983]; National Subscription Tel. v S & H TV, 644 F2d 820 [9th Cir 1981].)

. Quotation taken from the decision by Bergan, J., in People v Wachowicz (22 NY2d 369, 372 [1968]).