OPINION OF THE COURT
Mary H. Smith, J.
The defendant, Rafael Morel, has been indicted for criminal possession of a forged instrument in the second degree, eavesdropping, unlawful duplication of computer related material, criminal possession of computer related material, possession of burglar tools, a violation of section 397 of the Vehicle and Traffic Law involving operation of a motor vehicle equipped with a police scanner and a violation of section 402 of the Vehicle and Traffic Law for an improperly fastened license plate, allegedly committed in the Village of Larchmont on or about April 26, 1995. The defendant now moves by notice of motion and a supporting affirmation and memorandum of law for omnibus relief. The People’s response consists of an affirmation in opposition and memorandum of law. Upon consideration of these papers, as a well as a review of the Grand Jury minutes and exhibits and the consent discovery order entered in this case, the motion is disposed of as follows:
A. MOTION FOR DISCOVERY AND INSPECTION
This application is granted to the limited extent of ordering that the People are to provide the defendant with materials and information, the disclosure of which is required pursuant to the provisions of CPL 240.20, 240.44 and 240.45. Further, in order to facilitate the conduct of the proceedings to which the disclosure mandated by CPL 240.44 and 240.45 is relevant, the People are directed to effect such disclosure at least two days prior to the scheduled commencement of pretrial hearings and trial, respectively. As to the defendant’s demand for exculpatory material, the People are reminded of their obligation to disclose any such material immediately upon its discovery. Where a question exists as to whether any particular material is exculpatory, the People are urged to turn such matter over to the court for its in camera inspection to resolve the issue.
Further, the People are hereby directed to provide the defendant with the name, rank, badge number, department and business address of any police officer or member of a law *547 enforcement agency who was a witness to any of the conduct, transactions or occurrences alleged in the indictment, was present at any procedure at which the defendant was identified, or was not identified, as a perpetrator of any of the crimes alleged in the indictment, or was present when the defendant is alleged to have made any statement the disclosure of which is mandated pursuant to CPL 240.20 (1) (a) (see, People v Rhodes, 154 AD2d 279 [1st Dept 1989]; People v Bennett, 75 Misc 2d 1040 [Sup Ct, Erie County 1973]). This information shall be provided in writing within 15 days of the date of entry of this decision and order, unless the People shall have moved for a protective order pursuant to CPL 240.50 prior to the expiration of such period.
The application is otherwise denied as it seeks items or information which are beyond the scope of discovery and the defendant has failed to show that such items are material to the preparation of his defense (CPL 240.40 [1] [a], [c]).
B. MOTION FOR SANDOVAL HEARING AND MOTION FOR DISCLOSURE OF UNCHARGED BAD ACTS
These applications are granted in their entirety. The hearings shall be consolidated and conducted immediately prior to trial, at which proceeding the defendant has the burden of informing the court of whatever evidence of his prior conduct he seeks preclusion of (People v Matthews, 68 NY2d 118; People v Malphurs, 111 AD2d 266). In order to facilitate the conduct of these hearings, the People are hereby directed to provide the defendant with the notification mandated pursuant to CPL 240.43 upon their commencement.
C. MOTION TO STRIKE "SCANDALOUS MATTER” FROM THE INDICTMENT
This application is denied. The use of the specific language complained of by the defendant has been held appropriate to identify the defendant’s acts as public, rather than private wrongs (People v Gill, 164 AD2d 867).
D. MOTION TO DISMISS INDICTMENT FOR FACIAL INSUFFICIENCY
This application is denied. The indictment gives
"[a] plain and concise factual statement in each count which * * *
"asserts facts supporting every element of the offense[s] charged” (CPL 200.50 [7] [a]). *548 The indictment accords the defendant adequate notice of the precise charges against him (see, People v Iannone, 45 NY2d 589).
E. MOTION TO INSPECT AND DISMISS/REDUCE
The evidence before the Grand Jury showed that the defendants were observed by a police officer on patrol as they sat in an automobile in the parking lot of the Larchmont train station. The officer saw them move from one parking space to another, sit for a time, and then move to another space. When the three eventually left the car, the officer approached and asked what they were doing. Upon receiving conflicting responses, the officer sought and obtained from defendant Garcia consent to search his vehicle.
The officer saw, hidden under a floor mat beneath the car’s dashboard, a radio scanner and a digital audio tape recorder. When he asked the defendants the purpose of this equipment, he was told that they thought it was "fun” to listen to police radio communications, and that they had been taping the conversations. The officer ultimately took the defendants into custody and impounded the vehicle. A subsequent search of the car revealed a cellular telephone on the rear passenger seat.
Later investigation proved that the scanner found in the car had been programmed to receive coded information transmitted on cellular mobile telephone frequencies. The digital audio tape equipment was found to have been connected to the scanner and contained a tape recording of encoded information transmitted on various channels dedicated to cellular communications. Among the recorded information were the serial numbers and code numbers of cellular mobile telephones. As to the cellular mobile telephone found in the defendants’ car, an electronics expert from NYNEX determined that its serial number had been electronically altered, and the telephone had been programmed to transmit an unauthorized access code number.
The Grand Jury heard expert testimony regarding the so-called "cloning” of cellular telephones: that cellular mobile telephones are designed to transmit, periodically, on a specific frequency, coded information containing the serial number of the equipment as well as the telephone number assigned to it; that with the aid of a scanner and audio tape recording equipment similar to that found in defendant Garcia’s car, this information could be intercepted and recorded; and that, through *549 the use of additional equipment, the computer "chips” of cellular telephones could be reprogramed to emulate electronically the telephones whose transmissions had been intercepted. By this means, unscrupulous individuals could make cellular telephone calls that would be billed to the accounts of those whose electronic codes had previously been intercepted. Due to the inevitable delay between the placement of these calls and their billing (and thus the ultimate discovery of the "cloning”), a cellular telephone that had been cloned could be used to make calls for a period of about one month before the telephone company could change the access code information to prevent further unauthorized calls. Evidence was also presented to the Grand Jury that the cellular phone found on the rear seat of Garcia’s vehicle had been "cloned” in the manner just described.
Based upon this evidence, the Grand Jury returned an indictment charging the defendants with criminal possession of a forged instrument in the second degree, eavesdropping, unlawful duplication of computer related material, criminal possession of computer related material, possession of a police radio frequency scanner as a violation of Vehicle and Traffic Law § 397, and possession of burglar’s tools. Defendant Garcia was also charged with a violation of Vehicle and Traffic Law § 402 (1) for having his rear license plate insecurely fastened. The defendant now moves, inter alia, to dismiss the indictment for legal insufficiency. With respect to all but count five, this application is denied.
The evidence before the Grand Jury was sufficient to support the charge of criminal possession of a forged instrument in the second degree: the cloned computer "chip” in the cellular telephone found in the vehicle contained encoded computer data; computer data is specifically enumerated in the definition of "written instrument” contained in Penal Law § 170.00 (1); this instrument "does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status” as defined in Penal Law § 170.10 (1); and the cloned chip was "falsely ma[d]e” as that term is defined in Penal Law § 170.00 (4), insofar as the evidence before the Grand Jury indicated that it had been encoded without the authorization of the rightful owner of the telephone number programmed into it. Therefore, the knowing possession of a cloned cellular telephone chip with the intent to defraud, deceive or injure another constitutes the crime of criminal possession of a forged instrument in the second degree. Under the *550 facts of this case, guilty knowledge can readily be inferred from the defendants’ possession and use of equipment used in the process of cellular phone "cloning”. Thus, the evidence presented was sufficient to support this count of the indictment.
 Similarly, the actions of the defendants in accessing the electronic communications on the cellular telephone frequencies without authorization constitutes the offense of eavesdropping under Penal Law § 250.05; the taping of the cellular computer data, done as the evidence before the Grand Jury suggests with the intention of furthering the "cloning” of cellular telephones, constitutes the offense of unlawful duplication of computer related material under Penal Law § 156.30 (2); this also constitutes the inclusory count of criminal possession of computer related material under Penal Law § 156.35.
The possession of the scanner programmed to intercept cellular telephone code information and the possession of the digital audio tape recorder adapted to record these data fit the statutory definition of possession of burglar’s tools under Penal Law § 140.35. While the Legislature may have envisioned such relatively primitive implements as crowbars and lock picks when it enacted this statute, the definition given to burglar’s tools encompasses the sophisticated equipment at issue in this case. These items were adapted for use in furthering theft of telephone services, and the circumstances surrounding their use (including the simultaneous possession of a cellular telephone that had been "cloned” by the use of the same type of equipment as that found in the defendants’ car) evince an intent on the part of the defendants to use these devices in the commission of thefts of telephone services. Therefore, count six of the indictment is also supported by sufficient evidence.
While research of the case law shows that the prosecution’s theories may be novel, they comport with the Legislature’s direction to construe the Penal Law "according to the fair import of [its] terms to promote justice and effect the objects of the law” (Penal Law § 5.00; see, People v Ditta, 52 NY2d 657, 660). Indeed, the Court of Appeals has recently approved an expansive interpretation of the Penal Law in the specific area of computer crimes. In People v Versaggi (83 NY2d 123), the defendant’s conviction for the crime of computer tampering in the second degree under Penal Law § 156.20 was affirmed, with the Court holding that the element of alteration of a computer program was satisfied by evidence that the defendant had accessed a computer program designed to control telephone service and caused that program to shut off a number of telephones *551 for a period of time. Recognizing a legislative response to the burgeoning problem of computer crime, the Court of Appeals chose not to "legislate or nullify statutes by overstrict construction” (People v Versaggi, supra, at 131, citing People v Abeel, 182 NY 415, 421-422), and so avoided a restrictive interpretation of the term "alter” which would leave acts such as those committed by the defendant in Versaggi without penal sanction.
Nonetheless, the evidence before the Grand Jury was not sufficient to support the fifth count of the indictment, charging a violation of Vehicle and Traffic Law § 397 (possession in a motor vehicle of a radio capable of intercepting police communication frequencies). The testimony of the electronics expert in the Grand Jury showed that the scanner used by the defendants was programed to intercept only cellular telephone data frequencies. While the witness did testify that the scanner could be reprogramed to receive police communication frequencies, the possession of a radio receiver that could be modified to intercept unauthorized communications does not rise to the level of the crime proscribed by the Vehicle and Traffic Law.
People v Verdino (78 Misc 2d 719) does not suggest a contrary result. In that case, the defendant argued that since the scanner he possessed in his car was not connected to a power supply at the time he was stopped, the evidence was insufficient to support the charge of a violation of Vehicle and Traffic Law § 397. The court in Verdino held that a police scanner that needed only to be plugged into an electrical outlet in the vehicle to be operable was "capable” of receiving signals on the prohibited frequencies as that term is used in the statute. Here, the evidence before the Grand Jury suggested that, in order for the scanner in question to become capable of receiving police communications, some modification of the equipment was required. What was not made clear was the kind of modification needed: if the scanner could receive police frequencies by merely pushing a button or turning a dial, it probably would be considered "capable” of receiving police communications as the term is used in the statute; however, if the modification required involved dismantling the scanner and making internal adjustments, the device would not have the same capability.
 In short, in the absence of evidence that the defendants’ scanner could easily be tuned to police frequencies, the fifth count of the indictment must be dismissed. In addition, the ev *552 idence before the Grand Jury was insufficient to support count six of the indictment, charging a violation of section 402 of the Vehicle and Traffic Law. The only evidence adduced in support of this charge was the testimony of the arresting officer that "[t]he license plate bn the rear of the vehicle was on only by a twist tie, and usually is put on by screws. That is a violation of the New York State Vehicle and Traffic law.” Aside from the usurpation of the Grand Jury’s function evidenced in the latter sentence (as well as its incorrect statement of the law), count six must be dismissed for legal insufficiency. Section 402 of the Vehicle and Traffic Law merely requires license plates to be "securely fastened so as to prevent [them] from swinging”, and does not mandate the use of screws, bolts, or any particular fastener (see, People v Baez, 131 Misc 2d 689 [Crim Ct, Bronx County]). Since nothing in the officer’s testimony suggests that the license plate was insecurely fastened or free to swing, this count must be dismissed.
In sum, the defendant’s motion to inspect and dismiss or reduce counts of the indictment is denied as to all counts save for counts five and six. These counts are dismissed, with leave to the People to re-present to another Grand Jury, should they so choose.
F. MOTION TO STRIKE ALIBI DEMAND
This application is denied. The People’s demand pursuant to CPL 250.20 comports with due process requirements (People v Peterson, 96 AD2d 871).
G. MOTION FOR BILL OF PARTICULARS
This application is denied as moot, as the defendant was provided with an adequate bill of particulars as part of consent discovery.
H. MOTION TO STRIKE STATEMENT NOTICES
This application is denied. The notices in question comport with the requirements of CPL 710.30 (1) (a) (see, People v Lopez, 84 NY2d 425).
I. MOTION TO SUPPRESS STATEMENTS
This application is granted to the extent that the court will conduct a hearing prior to trial concerning any noticed statements allegedly made by the defendant, for the purpose of determining whether any of these statements were involuntarily made by the defendant within the meaning of CPL 60.45 (CPL 710.20 [3]; 710.60 [3] [b]; People v Weaver, 49 NY2d 1012).
*553 J. MOTION TO SEVER DEFENDANTS
This application is denied as premature with leave to renew immediately prior to trial upon an appropriate showing (see, CPL 200.20 [3] [a]). Defendant’s conclusory claim that, inter alia, the defenses likely to be raised are mutually exclusive and irreconcilable does not rise to the level of the compelling reasons required to mandate severance (see, People v Mahboubian, 74 NY2d 174).
K. MOTION TO SUPPRESS PHYSICAL EVIDENCE
This application is granted to the extent that a pretrial hearing will be held to determine whether the police conduct leading up to the seizure of evidence in this case was reasonable.