OPINION OF THE COURT
Deborah Kaplan, J.
The defendant was arrested and charged with criminal possession of stolen property in the fifth degree (Penal Law § 165.40) and possession of burglar’s tools (Penal Law § 140.35) upon allegations that he and two other individuals stole merchandise from a Staples store using a “booster bag.” The defendant moves to dismiss the information as facially insufficient. Upon consideration of the relevant law and the facts of this case, the defendant’s motion is denied.
I. Introduction
The information alleges that at approximately 5:55 p.m. on May 16, 2006, Police Officer James Lorenzo observed the defendant, codefendant Michael Milton and separately-charged defendant Shaquana Grey enter Staples, an office supplies store located at 488 Broadway in New York County. Grey was holding an empty shopping bag from “Coach,” a leather goods store. Staples employee Alberto Santini informed the officer that the three individuals proceeded to the aisle where the ink cartridges and printer cartridges were located. When Officer Lorenzo observed the three individuals exit the store, Grey was carrying the same shopping bag, which now appeared to contain items. Officer Lorenzo observed all three defendants enter a motor vehicle driven by the defendant. He stopped the vehicle and observed the shopping bag on the back seat.
Officer Lorenzo, citing his training and experience, categorizes the shopping bag as a “booster bag,” in that it is lined with grey electrical tape. He avers that bags altered in this manner are utilized to steal merchandise to which security devices are affixed in that the electrical tape has the effect of preventing store theft detectors from sensing security devices inside the bag. When Officer Lorenzo recovered the shopping bag from the back seat of the vehicle, he found it to contain 12 Panasonic ink cartridges, valued at approximately $350, and eight HP ink jet cartridges, valued at approximately $218.64. None of the defendants had receipts for these items. According to the information, Alberto Santini is the custodian of that property and *766 the defendants did not pay for the property or have permission or authority to take or possess it.
II. Criminal Possession of Stolen Property in the Fifth Degree
The defendant does not dispute that the cartridges recovered from inside the shopping bag were “stolen property.” (See Penal Law § 165.40.) He argues, however, that the count charging him with criminal possession of stolen property in the fifth degree must be dismissed because the information fails to sufficiently allege that he “knowingly possessed” the stolen property. The defendant’s contention is without merit.
A criminal court information is sufficient on its face if it contains nonhearsay factual allegations which, if true, establish every element of the crimes charged and provide reasonable cause to believe that the defendant committed them. (See CPL 100.40 [1]; 100.15 [3]; People v Alejandro, 70 NY2d 133 [1987]; People v Dumas, 68 NY2d 729 [1986].) “A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by the owner thereof.” (Penal Law § 165.40.) “Possess” is defined as “to have physical possession or otherwise exercise dominion or control over tangible property.” (Penal Law § 10.00 [8].) Therefore, to demonstrate constructive possession, the People must allege facts sufficient to show that the defendant “exercised ‘dominion or control’ over the property by a sufficient level of control over the area in which the contraband [was] found.” (People v Manini, 79 NY2d 561, 573 [1992].) As the Court of Appeals has noted, “[i]nferences of knowledge are rooted in probabilities based on experience and proof.” (People v Sanchez, 86 NY2d 27, 33 [1995].) Therefore, “possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises.” (People v Reisman, 29 NY2d 278, 285-286 [1971] [emphasis added].)
It can be reasonably inferred from the allegations of the information that the defendant knew that the Coach shopping bag carried by Grey contained the stolen cartridges. Even though the information does not allege that the defendant carried the shopping bag himself, it does allege that Officer Lorenzo observed him enter Staples with Grey and Milton, that a Staples employee observed all three individuals proceed together to the aisle where the ink and printer cartridges were located and that *767 all three individuals exited the store together. All the while, Grey was carrying the same shopping bag she carried into the store. After exiting the store, all three defendants entered the same vehicle, driven by the defendant, and the bag was recovered from the back seat of that vehicle. According to Officer Lorenzo, the shopping bag appeared empty when the three individuals entered Staples and appeared full when they exited. Indeed, the bag was found to contain a total of 20 cartridges, a quantity which cannot easily be concealed. These allegations establish that the defendant exercised “dominion or control” over the stolen merchandise within the meaning of Penal Law § 10.00 (8) (see People v Manini, supra; People v Reisman, supra).
Contrary to the defendant’s further contention, the information sufficiently alleges his accessorial liability for this offense. Penal Law § 20.00 defines the “acting in concert” principle as follows: “[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.” The allegations that the defendant accompanied Grey in and out of the store and drove the vehicle where the stolen property was recovered establish that he acted in concert with Grey by “intentionally aid[ing]” her in stealing the merchandise.
Accordingly, the court finds that the allegations of the information sufficiently establish, for pleading purposes, that the defendant “knowingly possessed” the stolen property within the meaning of Penal Law §§ 165.40 and 10.00 (8).
III. Possession of Burglar’s Tools
Penal Law § 140.35 provides that
“[a] person is guilty of possession of burglar’s tools when he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, or offenses involving larceny by a physical taking . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character.”
For the reasons set forth below, the altered Coach shopping bag or “booster bag” which was adapted to facilitate a larceny and was recovered from the defendant’s vehicle constitutes a burglar’s tool within the meaning of the statute.
*768 The Practice Commentary to Penal Law § 140.35 explains that “despite the name of the offense, the instrumentalities need not be solely for the commission of burglary, although they must be for one of the specified categories of crime.” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.35, at 93.) Furthermore, “there is no requirement that the instrumentality be specifically designed only for the commission or facilitation of the specified offenses; the instrument may have a legitimate use, and burglar’s tools often do.” (Id.) Of course, an ordinary shopping bag, in a normal condition and used in a normal manner, does not constitute a burglar’s tool as defined by Penal Law § 140.35. The same is true for other common articles such as keys. In People v Baer (96 AD2d 717, 717-718 [4th Dept 1983]), the Court held that a duplicate key found in the defendant’s possession, which was neither adapted nor designed for a criminal purpose, “cannot be said to be commonly used for committing or facilitating offenses . . . involving larceny.” Thus, even though the defendant had stolen the key and used it to enter another’s room and steal a television, he could not be charged with criminal possession of a burglar’s tool. It has also been held that “such things as screwdrivers or lengths of wire are not in and of themselves ‘burglar’s tools’ and no presumption of intent may arise from mere possession of such instruments.” (People v Borrero, 26 NY2d 430, 434 [1970]; see also People v Atson, 139 AD2d 520 [2d Dept 1988]; People v Francia, 154 Misc 2d 211 [Crim Ct, NY County 1992].)
However, Penal Law § 140.35 plainly provides that any ordinary “article” may be considered a burglar’s tool where it has been “adapted, designed or commonly used for committing or facilitating offenses involving . . . larceny . . . under circumstances evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character.” Furthermore, it is well settled that the element of intent to possess an instrument for an unlawful purpose may be established by circumstantial evidence. (See People v Borrero, supra; People v Smith, 23 NY2d 955 [1969].) Thus, the “key” in determining whether a commonly-used article constitutes a burglar’s tool is the presence or absence of circumstances evincing an intent to use the article to commit a larceny. (See People v Borrero, supra.)
In Borrero (supra), the defendant was observed forcefully prying open the window of a parked vehicle with a screwdriver *769 and, when approached by another man, said a few words and suddenly put the screwdriver under his jacket and walked away. The Court of Appeals found this evidence sufficient to warrant the inference that the defendant was not the owner of the vehicle who had merely locked himself out but was attempting to break into a car he did not own and thus possessed the screwdriver with the requisite intent to charge him with possession of burglar’s tools. Similarly, in People v Aviles (99 AD2d 1025, 1025-1026 [1st Dept 1984]), the First Department found the requisite intent where a large number of tools, including screwdrivers, pry bars and a bent wire hanger, i.e., “tools and instruments normally utilized to effectuate” a car theft, were found in the defendant’s possession after he was observed “casing” parked cars. (See also People v Morgan, 9 AD3d 375 [2d Dept 2004] [officer observed defendant attempting to use screwdriver and wire to start car on closed lot]; People v Caraballo, 135 Misc 2d 536 [Crim Ct, Kings County 1987] [pliers and piece of wire found in defendant’s possession and defendant alleged to have tampered with automobile lock and removed dashboard radio].)
The trial evidence in People v Collins (287 AD2d 271 [1st Dept 2001]) showed that the defendant was. observed trying to place a metal object inside the doorknob of a neighbor’s apartment and was found nearby still holding a lock pick and other such objects were found on his person. The First Department held that this evidence was sufficient to support the charge of possession of burglar’s tools. In People v Gastiaburo (23 AD2d 891 [2d Dept 1965]), the Second Department held that ordinary toothpicks used by the defendant to prevent an owner from entering his apartment while a larceny was in progress constituted a burglar’s tool. An ordinary box cutter was found to be a burglar’s tool in People v Givens (164 Misc 2d 463 [Crim Ct, NY County 1995]) because it was alleged to have been found in the possession of the defendant, who was observed exiting and running from a stolen vehicle that had had its radio wires cut.
Here, the allegations that Grey carried the Coach shopping bag into and out of the store and that the defendant entered the store with her and Milton, walked with them to the cartridge aisle and left the store with them without paying for the items are clearly circumstances “evincing an intent to use or knowledge that some person intends to use the same in the commission of an offense.” (Penal Law § 140.35.) Moreover, the information does not merely allege that the shopping bag was an *770 ordinary shopping bag used in the commission of a larceny. Rather, it alleges that the bag was specifically adapted for that use. As stated above, the shopping bag was lined with electrical tape. Logic dictates that the modifications made to the bag constitute further “circumstances” establishing the defendants intent.
This court is not unaware of the decisions in Matter of Charlotte K. (102 Misc 2d 848 [Fam Ct, Richmond County 1980]) and People v Trotman (NYLJ, Feb. 8, 2001, at 29, col 4 [Crim Ct, NY County]), but finds those cases to be inapposite. In Matter of Charlotte K., the defendant was charged with possession of burglar’s tools upon an allegation that she stole certain items from Macy’s department store by depositing them into her girdle. However, as that court pointed out, the offending girdle was an ordinary article of foundation clothing and was not designed, adapted or modified to facilitate larceny. Similarly, in People v Trotman, the court held that the defendant’s jacket, which he used to shield his attempt to steal property from the purse of a fellow subway rider, was not a burglar’s tool within the meaning of the statute. There was no allegation that the defendant’s jacket was designed, adapted or modified to commit or facilitate the crime. Moreover, after examining several other Penal Law provisions which “make possession of a myriad of instrumentalities of criminal conduct a crime” as well as the legislative history of Penal Law § 140.35, that court recognized that there are a “wide variety of items or devices which may be used for the purpose of committing a larceny” and that “the penal law definition of a larcenous device was intended to be flexible.” (People v Trotman, supra at 29, col 6.)
Indeed, the statutory definition has been found to encompass a radio scanner, digital audiotape recorder and cellular telephone which were reprogrammed or altered to intercept and record coded information transmitted on cellular mobile telephone frequencies which the defendants then used to make cellular telephone calls billed to accounts not their own. In People v Garcia (170 Misc 2d 543 [Westchester County Ct 1996]), the equipment was recovered from the defendants’ car after a police officer observed them repeatedly moving from space to space in a parking lot. When asked to explain their conduct, each defendant gave conflicting responses. As reasoned by the court in that case (at 550), while “the Legislature may have envisioned such relatively primitive implements as crowbars and lock picks when it enacted [Penal Law § 140.35],” the alterations made to *771 the equipment by the defendants and the circumstances surrounding their use evinced an intent to use the equipment in the commission of cellular telephone service theft. Similarly, in this case, while the present day prevalence of security devices in retail stores and tools or devices designed to evade them may not have been contemplated by the drafters of the statute, the altered shopping bag used by the defendants in this case clearly falls within the statute’s definition of “burglar’s tools.” That is, where a shopping bag has been specially altered for the purpose of committing a larceny by being lined with electrical tape, and is possessed under circumstances evincing an intent to use it in the commission of a theft and, indeed, is used to steal 20 ink cartridges from an office supply store, it constitutes a burglar’s tool as defined by Penal Law § 140.35.
IV Conclusion
The defendant’s motion to dismiss the information is denied.
The defendant’s motion to suppress physical evidence is granted to the extent that a Dunaway ¡Mapp hearing is ordered.
The defendant’s Sandoval motion is referred to the trial court.