In the Matter of KEVIN B., a Person Alleged to be a Juvenile Delinquent, Respondent.

In the Matter of TIMOTHY L., a Person Alleged to be a Juvenile Delinquent, Respondent.

First Department, May 7, 1987

### APPEARANCES OF COUNSEL

*Lucy A. Cardwell* of counsel *(June A. Witterschein* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), *pro se.*

*Dustin P. Ordway* of counsel *(Lenore Gittis,* attorney), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

In each of these two juvenile delinquency proceedings the presentment agency, the Corporation Counsel of the City of New York, appeals from the dismissal of the petition after opening statements, but before any witness was sworn. In

each opening statement the Assistant Corporation Counsel indicated that an eyewitness police officer, but not the complainant, would testify to prove the acts charged. In dismissing, Family Court (the same Judge in each instance) held that the failure to call the complainant as a witness would be fatal to the presentment agency's case. We find this to be error, since in each case the elements of the alleged offenses, including that of larcenous intent and lack of consent, could be proven beyond a reasonable doubt through the testimony of the eyewitness police officer, without the testimony of the victim. Accordingly, we reverse, reinstate the petitions and remand for further proceedings.

Respondent Kevin B. was charged with having committed acts which, if committed by an adult, would constitute the crimes of criminal mischief in the third degree (Penal Law § 145.05), attempted grand larceny in the third degree (Penal Law §§ 110.00, 155.30 [1]) and unauthorized use of a vehicle in the third degree (Penal Law § 165.05). After announcing his readiness to proceed with opening statements and a fact-finding hearing, the Assistant Corporation Counsel indicated that he would not present any evidence as to the value of the property involved. He therefore asked the court to consider the lesser included offenses of criminal possession of stolen property in the third degree and attempted petit larceny with respect to the charges of criminal mischief in the third degree and attempted grand larceny in the third degree, respectively.[1] He then described the testimony anticipated from his single witness. The officer, who had patrolled the particular neighborhood for several years and knew it for the frequency of car thefts committed therein, was on patrol around 12:50 on the morning in question, when he noticed two individuals, one of whom he recognized as Kevin B., looking into car windows. The two looked into a BMW, walked on, still looking into cars, and then returned to the BMW. While Kevin B. stood by, apparently as a lookout, the other, an adult, broke into the BMW and tried to remove a radio. Before he could do so, however, the officer arrested the two.

The Assistant Corporation Counsel informed the court that the car owner would not testify, but argued that direct evidence of ownership is not necessary to prove larcenous intent.

---

1. The Assistant Corporation Counsel undoubtedly intended to ask the court to consider criminal mischief in the fourth degree (Penal Law § 145.00), rather than criminal possession of stolen property, as the lesser included offense of criminal mischief in the third degree.

The Law Guardian argued that on the basis of such proof the presentment agency's case would fail for two reasons: the car owner is a necessary witness to establish lack of permission to enter the car and to remove its contents; and that without overt action on respondent's part, the officer's testimony could not establish that he acted in concert with the other person. The court considered the Law Guardian's argument as a motion to dismiss and granted the same, apparently concluding that proof by direct evidence of the car's ownership through the testimony of the complainant would be necessary.

Respondent Timothy L. was charged with having committed acts which, if committed by an adult, would constitute the crimes of petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40). In his opening, the Assistant Corporation Counsel stated that the complainant, who operates a store on Fordham Road in The Bronx, was sick and unable to come to court, but that an eyewitness police officer would testify that at the time in question he observed Timothy L. take an umbrella from a stand in the complainant's store.

As the Assistant Corporation Counsel tried to summarize the anticipated testimony, the court interrupted, saying: "[Counsel], I will not hear you testify as to what the facts are * * * I have heard you on the law". The Assistant Corporation Counsel argued that he would prove beyond a reasonable doubt each element of the two offenses charged since the officer's testimony describing the incident and the surrounding circumstances would make it clear that Timothy L. did not own the umbrella, did not have permission or authority to take or possess it, and intended to steal it and to benefit himself or a person other than the owner. Direct proof of ownership was unnecessary, he argued, because ownership may be reasonably inferred from the surrounding circumstances. Similarly, he argued, lack of permission could be reasonably inferred from the officer's testimony. The court, *sua sponte,* dismissed the petition due to the absence of a complaining witness, stating: "There is no complaining witness * * * no confrontation here of an accuser".

Initially, both respondents claim that these appeals must be dismissed because the presentment agency is statutorily barred from appealing an order dismissing a delinquency petition after the commencement of a fact-finding hearing. In New York, the right to appeal is based solely upon express statutory or constitutional authorization. *(Friedman v State of*

*New York,* 24 NY2d 528, 535.) Family Court Act § 365.1 (2) limits appeals in delinquency proceedings by a presentment agency to those from:

"(a) an order dismissing a petition prior to the commencement of a fact-finding hearing; or

"(b) an order of disposition, but only upon the ground that such order was invalid as a matter of law; or

"(c) an order suppressing evidence entered before the commencement of the fact-finding hearing".

■ Respondents, noting that Family Court Act § 342.1 provides that a fact-finding hearing commences with the opening statements, argue that these appeals are barred by section 365.1 (2) (a), upon which the Corporation Counsel relies for jurisdiction, since the orders of dismissal were entered in each instance after both parties had delivered opening statements. Thus, they claim, the dismissals came after the commencement of the fact-finding hearing. While statutory provisions defining the right to appeal must be strictly construed *(People v Garofalo,* 71 AD2d 782; *see, Brownstein v County of Westchester,* 51 AD2d 792), we find these orders of dismissal to be appealable as of right.[2]

If section 365.1 (2) is to be read literally, then the Family Court Act failed to provide for an appeal by the presentment agency from an order of dismissal entered after the commencement of a fact-finding hearing but before a witness is even sworn to testify. As the Practice Commentary to section 365.1 of the Family Court Act makes clear (Sobie, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 365.1, at 584), however, the presentment agency's right to appeal adverse decisions was limited, not arbitrarily, but rather to avoid conflict with double jeopardy principles, which *(see, Breed v Jones,* 421 US 519) are applicable to juvenile proceedings. Thus, for example, the Legislature, by enacting Family Court Act § 365.1 (2) (c), foreclosed dispositional order appeals seeking to increase the severity of a sanction. Such a procedure would, of course, offend double jeopardy precepts. *(See, Matter of John P.,* 74 AD2d 403.) In delinquency proceedings an order of disposition, according to Family Court Act § 352.2, follows a

---

2. Leave to appeal from an order in a delinquency proceeding is available only to a respondent. Family Court Act § 365.2, entitled, "Appeal by permission", provides: "An appeal may be taken by the respondent, in the discretion of the appropriate appellate division, from any other order under this article."

dispositional hearing, i.e., it is an order, which, *inter alia,* conditionally discharges the respondent or places him in a facility upon a previous finding of delinquency.

In the case of an adult, however, jeopardy does not attach in a trial by the court without a jury until a witness is sworn. (CPL 40.30 [1] [b].) We are unaware of any reason why a different standard should apply in juvenile proceedings. Thus, the problem of double jeopardy does not arise here, where the court dismissed the delinquency petition after the close of opening statements but before the presentment agency's first witness was sworn. *(See, People v Kurtz,* 51 NY2d 380, 385-386 [better practice with respect to motion to dismiss indictment on the ground of inadequate opening statement is for motion to be made and disposed of, with an opportunity to cure, before trial proceeds, thereby avoiding the issue of double jeopardy].) Since the restrictions on a presentment agency's right of appeal contained in Family Court Act § 365.1 (2) were intended to eliminate double jeopardy concerns, an appeal taken from an order of dismissal made at the close of opening statements is not prohibited. Thus, we conclude that neither section 365.1 (2) nor the Double Jeopardy Clauses of the Federal or State Constitutions bars this appeal, and thus, this court has jurisdiction to review the substantive issue.

The presentment agency has the burden of proving beyond a reasonable doubt each element of the offenses charged. Its proof may consist of direct or circumstantial evidence. Here, as shown by the Assistant Corporation Counsel, the proof in each case was to consist of both direct and circumstantial evidence. In determining whether guilt has been proved beyond a reasonable doubt, New York courts have applied a rigorous standard if the prosecution's case depends entirely on circumstantial evidence. "[F]or guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence." *(People v Benzinger,* 36 NY2d 29, 32.) This stringent standard is not applied, however, where the prosecution's proof is not solely circumstantial, particularly where the proof by circumstantial evidence relates to only one element, such as intent. *(See, People v Barnes,* 50 NY2d 375, 379-380; *People v Licitra,* 47 NY2d 554, 558-559; *People v Von Werne,* 41 NY2d 584, 589-590.) Of course, rarely, if ever, is intent proved by direct evidence. When the prosecution's proof on intent is based on circumstantial evidence, the

fact finder must decide " 'whether, considering the facts proved and the inferences that could reasonably be drawn therefrom * * * there was no reasonable doubt that the defendant' intended to commit the crimes charged." *(People v Barnes, supra,* 50 NY2d, at 381, quoting *People v Castillo,* 47 NY2d 270, 277.)

■ In *Kevin B.,* the officer who observed the incident would testify that he saw respondent and another person walking up and down the street looking into car windows. Twice, they looked into a BMW. While respondent stood by watching, the other person broke into the BMW and tried to remove a radio. Before he could do so, however, the officer arrested respondent and his companion, whose demeanor and actions he would be able to describe. Thus, the officer's testimony would have shown that respondent was no mere bystander and would provide direct evidence as to each element of the offenses charged except intent, ownership of the car and lack of consent to enter and remove its contents. His observations, however, would have clearly provided circumstantial evidence from which these remaining elements could be inferred beyond a reasonable doubt.

The first count of the petition, charging respondent with criminal mischief in the third degree, requires proof of four elements: that tangible property of another person was actually damaged; that the accused intentionally damaged the property; that the accused had no reasonable ground to believe he had such right; and that the property was worth more than $250. (Penal Law § 145.05.) Only the first three elements need be established to prove the lesser included offense of criminal mischief in the fourth degree. (Penal Law § 145.00.) The police officer's testimony, as described in the opening statement, would provide direct and circumstantial evidence as to those three elements, and could form the basis of a fact finding on the first count.

The officer's testimony would also provide direct and circumstantial evidence with respect to each element of attempted petit larceny (Penal Law §§ 110.00, 155.25), the lesser included offense under the second count. Respondent's larcenous intent could have been inferred from the events observed by the officer. *(See, People v Von Werne, supra,* 41 NY2d, at 589.) Similarly, the officer's testimony could form the basis of a fact finding on the third count, unauthorized use of a vehicle in the third degree. The car owner's lack of consent may be proved beyond a reasonable doubt by the officer's observations

of respondent and the other person, as they looked into various cars, returned to the BMW, broke into the car and attempted to take out a radio. *(See, People v Borrero,* 26 NY2d 430.)

The incident underlying *Borrero (supra)* is virtually indistinguishable from the incident in *Kevin B.* There, the Court of Appeals held that circumstantial evidence, even without the testimony of the car owners as to their ownership of the subject vehicles, established that the defendants possessed certain instruments with the intent to break into the automobiles without permission. "[T]he defendants' lack of ownership may reasonably be inferred from the surrounding circumstances." *(Supra,* at 436; *see also, People v Shurn,* 69 AD2d 64, 67 [fact finder may infer larcenous intent and fact of ownership from evidence other than testimony of owner].)

Similarly, in this case, respondent's lack of ownership, the owner's lack of consent and respondent's intent may be reasonably inferred from the circumstances surrounding the incident. The officer's testimony would lead a reasonable person, applying common human experience, to conclude that respondent committed criminal mischief, attempted to commit petit larceny, and used a vehicle without authorization. *(See, People v Wachowicz,* 22 NY2d 369, 372.)

Likewise, in *Timothy L.,* the officer who observed the incident would testify that he saw respondent take an umbrella from the complainant's store. The officer would also be able to describe respondent's and the alleged victim's demeanor and conduct during the incident. Thus, the officer's testimony would provide direct evidence of asportation. His testimony would also present facts from which proof of the other elements of the two offenses could reasonably be inferred, including ownership, lack of consent and intent. Thus, the officer's testimony, *in sum,* would have provided direct and circumstantial evidence from which respondent's guilt could have been established beyond a reasonable doubt. The court, however, refused to allow the Assistant Corporation Counsel to summarize the evidence he expected to present in support of the petition. Its refusal was error since, as already noted, the Court of Appeals has made it clear that the trial court must afford the prosecutor the opportunity to correct any deficiency in the opening statement before granting a motion to dismiss. *(People v Kurtz, supra,* 51 NY2d, at 385.)

■ Finally, both respondents argue that the orders of dis-

missal should be affirmed since a remand would not serve any useful purpose. Kevin B. is already in court-ordered placement on an unrelated matter. Timothy L., who is now over 16 years of age, was placed on probation following a finding on an unrelated matter. That a respondent has been placed after a fact finding in another case is clearly not dispositive of the issue of whether the "needs and best interests of the respondent as well as the need for protection of the community" (Family Ct Act § 352.2 [2]) require placement in this particular case. Other relevant evidence may be produced during further proceedings on these petitions regarding the placement that most effectively serves respondent's needs and best interests and, at the same time, protects the community. In considering this evidence, the Family Court may, of course, also take note of an existing placement. Merely because a respondent is already in placement, however, is an insufficient basis upon which to preclude a presentment agency from going forward on its petition.

Accordingly, the orders of Family Court (Mortimer Getzels, J.), entered November 21, 1985 and January 30, 1986, respectively, dismissing the petitions should be reversed, on the law, without costs or disbursements, the petitions reinstated and the matters remanded for further proceedings.

MURPHY, P. J. (dissenting). Although I agree with the majority that this appeal is properly before us, I cannot agree that the Family Court Judge abused his discretion when he dismissed the juvenile delinquency petitions here involved against respondents Kevin B. and Timothy L. In each case, the Assistant Corporation Counsel's opening statement disclosed deficiencies in the presentment agency's proof so fundamental as to make further proceedings futile and, indeed, wasteful.

Respondent Kevin B. was charged with acts which, if committed by an adult, would constitute the crimes of criminal mischief in the third degree, attempted grand larceny in the third degree, and unauthorized use of a vehicle in the third degree. After one adjournment requested by petitioner on April 18, 1985, in order to secure the complainant's presence in court, the fact-finding hearing finally commenced on November 21, 1985. The Assistant Corporation Counsel (hereinafter the ACC) opened by announcing that since the complainant had not been reached during the previous seven months, the entire case would consist of the testimony of the arresting

officer. As the officer was unable to establish the value of the property involved in the charged offenses, the ACC requested that the court consider the lesser included offenses of criminal mischief in the fourth degree and attempted petit larceny, neither of which requires proof of property value. The balance of the ACC's opening statement reads: "Officer Quine [the arresting officer] is going to testify on the night of April 13, 1985, about 12:50 in the morning he was on patrol when he observed two individuals looking into a car. They were walking in the neighborhood peering into the windows of cars, one of them a BMW when he first saw these individuals. He in effect recognized one of them as Kevin B. The officer who had been on patrol in the station of that neighborhood for several years and he knew Kevin B. on sight. Looking at them peering in the window, this area is known to the officer as prone to having cars breaking [sic] into. Observing he continued to follow them. While on patrol he observed them looking into other cars and ultimately stopped. They were back at the BMW they were originally looking into and while Kevin B. stood outside acting as a lookout the other individual Thomas Sacks, an adult, went into the car and attempted to remove the radio. When he observed the crime the officer approached and apprehended the two individuals before they had an opportunity to remove the radio from the car."

Following this opening, the Law Guardian moved to dismiss the petition on the ground that without the complainant's testimony it could not be established that respondent and Sacks were without permission to enter the car and remove property therefrom. In addition, the Law Guardian urged that the testimony of the police officer would not be sufficient to prove that respondent acted in concert with the adult, Sacks. Thereafter, the court correctly observed that a motion to dismiss, made at the end of the prosecution's opening statement, must be ruled on before proceeding with the presentation of evidence *(People v Kurtz,* 51 NY2d 380, 386). Prior to ruling on the motion, however, the court permitted the ACC an opportunity to be heard. The ACC added nothing to his previous account of the case. Rather, he argued in reliance on *People v Borrero* (26 NY2d 430) that the arresting officer's testimony would be sufficient to prove respondent's larcenous intent. Unconvinced, the court granted respondent's motion and dismissed the petition.

In the *Matter of Timothy L.,* the respondent was charged with acts which, if committed by an adult, would constitute

the crimes of petit larceny and criminal possession of stolen property in the third degree. The ACC's opening in *Timothy L.* consisted of a perfunctory recitation of the elements of the crimes charged, followed by this account of the proof to be offered: "We're going to prove the elements of both these defenses *[sic]* based on testimony of only one witness, the police officer in this matter; the witness to the entire crime perpetrated by this respondent. And in addition, under 'circumstances upon which the respondent did perpetrate the crime,' the circumstances will be clear that there was absolutely no permission or authority of the apparent owner of this property to have the respondent take or possess the umbrella, your Honor. We will prove all these elements with the aid of this officer who eye-witnessed this incident to the crime by proof beyond a reasonable doubt, your Honor." Following a brief opening statement by counsel for respondent, underscoring the elements of the offenses to be proved, the court dismissed the petition. The ACC, however, was permitted to make a record. In his ensuing comments the ACC, relying once again on *People v Borrero (supra)* urged that the crimes charged could be proved from the "surrounding totality of the circumstances" concerning which the police officer would testify. No elaboration was provided by the ACC as to what the police officer would say that would so unerringly indicate the respondent's guilt. Rather, the ACC began to relate what he had been told by the complainant, who, of course, was not available to testify. At this point, the court quite appropriately cut the ACC short, stating: "Mr. Sanders, I will not hear you testify as to what the facts are". The court adhered to its prior ruling and dismissed the petition.

The presentment agency, of course, has the burden of proving beyond a reasonable doubt the respondent's commission of each element of the offense charged. Although evidence adduced to support a conviction may be circumstantial, the evaluation of circumstantial evidence by the trier of fact presents difficulties which do not obtain where there is direct evidence. Reliance on circumstantial evidence involves the trier in a process of inferring facts directly probative of guilt from other circumstances. Where evidence is wholly circumstantial, special care must be taken to assure that the inferences made are sufficiently strong to constitute proof of guilt beyond a reasonable doubt. Thus, it is well established that a case based entirely on circumstantial evidence must eliminate "to a moral certainty" every reasonable theory of innocence.

*(People v Benzinger,* 36 NY2d 29, 32.) While it is true that where there is only limited reliance on circumstantial evidence, the fact finder's process of inference is not so strictly scrutinized *(see, e.g., People v Barnes,* 50 NY2d 375, 379-380), that can be of very little help to the presentment agency in the within matters. This is because, contrary to the majority's assertion, the evidence in *Kevin B.* was wholly circumstantial, and in *Timothy L.,* although there was direct proof of asportation, as the majority concedes, all the remaining elements of the offenses charged (i.e., ownership, lack of consent, and intent), would have had to be inferred from the attendant circumstances as reported in the arresting officer's testimony.

Case law does not appear to address the point specifically, but where, as in *Timothy L.,* there is direct proof of only one of several elements of a crime, it is questionable whether the rigorous inferential standards ordinarily applicable to circumstantial cases ought to be relaxed. If only one element of an offense (usually intent or knowledge) is circumstantially proven, the "moral certainty" standard need not be applied *(see, People v Von Werne,* 41 NY2d 584, 590); the strength of the inference is sufficiently assured by the direct evidence as to the offense's other elements. Thus, in a larceny case where there is direct evidence of asportation and the complainant testifies as to ownership and lack of consent, the inference of intent to steal follows quite naturally from the direct evidence as to the remaining elements of the offense. But in a case like *Timothy L.,* where there is direct proof of asportation only, and the other elements of the charged offenses including ownership, lack of consent and intent, all have to be proved from the circumstances attending the asportation, the inferences necessary to support a finding of guilt are numerous and do not invariably flow naturally or with a high degree of necessity from surrounding circumstances. In such cases, it would seem important to examine the inferential process with special care; although the reliance on circumstantial evidence is not exclusive, it is sufficiently great that the rationale underlying the application of the "moral certainty" standard should not be lost sight of. Having made these observations, I would note that whether or not the "moral certainty" standard applies to the evaluation of the evidence in the within cases as I believe it should, the ultimate question remains whether the above-quoted opening statements provided the court with any indication that the charges against the respon-

dents could be proven beyond a reasonable doubt. In my view they did not.

In *Kevin B.*, if we disregard the numerous irrelevancies in the ACC's opening statement, the case boils down to this: a police officer saw respondent in the company of an adult looking into cars and subsequently observed the adult enter one of the cars and attempt to remove a radio as the respondent stood on the nearby sidewalk.

The first count which the ACC proposed to prove against respondent Kevin B., criminal mischief in the fourth degree (Penal Law § 145.00), requires proof that the accused, having no right to do so nor any reasonable ground to believe that such a right exists, has intentionally damaged the property of another.

Initially, it should be pointed out that the ACC's opening statement did not indicate that the arresting officer saw either respondent or the adult he was with damage the car. Nowhere in the ACC's statement is it asserted that the adult broke into the car. The ACC said only that the officer observed the adult as he "went into the car and attempted to remove the radio". The statement contains not the slightest indication that the car was in any way damaged, much less that it was damaged by respondent in concert with the adult. Moreover, given the apparent lack of any proof that the car had been damaged, it is very difficult, if not impossible, to see the basis for inferring the other elements of fourth degree criminal mischief. Had the ACC indicated that the adult had been observed damaging the car in an effort to gain entry or to remove the radio, it would at least be arguably inferable that the adult had no right to act as he did. But if such testimony was to be given by the officer, the court was not so apprised.

It is in this respect that the present case differs markedly from *People v Borrero* (26 NY2d 430, *supra*). In *Borrero*, a police detective observed the defendant prying on the window vent of a parked automobile with a screwdriver, apparently trying to shear off the vent lock so as to obtain entry to the vehicle. After several minutes, the defendant was spoken to by a third party and abruptly ceased his activity; he placed the screwdriver under his jacket and began to walk away, at which point he was apprehended. The Court of Appeals found that although the evidence was circumstantial, it was strong enough to exclude any reasonable hypothesis that the use of the screwdriver was innocent. As the court observed: "com-

mon experience would suggest the owner of the car would have a locksmith or mechanic open the car, rather than pay the cost of a new window and its installation. Moreover, such a hypothesis hardly comports with the conduct of the defendant who suddenly stopped his labors after a few words from another person, secreted the screwdriver under his jacket and departed the scene" *(supra,* at 436). Clearly, the observations of the officer in the present matter, as described in the ACC's opening statement, were quite different from those of the detective in *Borrero.* As noted, the ACC gave no indication that the officer would testify that the car had been entered in a manner patently inconsistent with ownership or permissive use so as to obviate the necessity of the complainant's testimony.

Even more problematic is the difficulty in linking respondent culpably to the adult's activities. Although it is asserted that respondent was acting as a "lookout", there was absolutely no reference to any specific activity on respondent's part, observed by the officer, that would even circumstantially confirm that he was aiding the adult in the commission of a crime. It should be noted that guilt of fourth degree criminal mischief cannot be established unless it is proven that the accused did not reasonably believe that he had a right to act as he did. To establish this element in the present matter would entail proving not only that the adult was without reasonable grounds to believe he was acting rightfully, but that his 13-year-old companion, respondent, was aware of that. Yet, even if respondent was aware of the wrongful nature of the adult's conduct, something about which there may be considerable doubt given the benign description of the adult's conduct provided in the opening statement, that still would not be sufficient to prove respondent's guilt as an accessory to criminal mischief and attempted petit larceny. It would remain necessary to prove that he intentionally aided in the conduct constituting the offense.

In *Matter of Victor M.* (68 AD2d 837), this court addressed the propriety of imposing accessorial liability in circumstances very much like those here obtaining. In that case, the respondent stood beside the complainant's automobile as his companion reached into the car and grabbed a pocketbook. The two then climbed a fence and fled through a park until they were apprehended about a half mile away, with the companion still in possession of the pocketbook. We noted: "[a]lthough this 10 year old may have acted with the knowledge that the pocket-

book was stolen, it is an additional prerequisite to guilt that he intentionally had aided his corespondent in the conduct constituting the offense. (Penal Law, § 20.00.) We cannot conclude that appellant's actions in following the purse snatcher over the fence and running with him into the park evince, to the exclusion of every other reasonable hypothesis consistent with innocence, an intentional aiding in the commission of the crime" *(Matter of Victor M., supra,* at 837).

If it was not possible to hold the respondent in *Victor M. (supra)* accountable as an accessory, neither would it be possible to hold respondent herein accessorially liable. In *Victor M.,* the flight of the two juveniles after the theft at least gave some indication that they were acting together. Here, however, there is nothing but the ACC's conclusory assertion that respondent was observed acting as a "lookout". If there was some factual basis for this conclusion, some specific conduct observed by the arresting officer, from which it could be inferred that respondent was in fact acting as a "lookout", the ACC wholly failed to bring it to the court's attention. All that could be fairly gleaned from the ACC's opening remarks in *Kevin B.* was that respondent stood nearby as the adult, in whose company he had been, "went into" a car and engaged in conduct of uncertain legality, which respondent may or may not have known was wrongful. As has been observed in circumstances far more indicative of accessorial liability than those here obtaining, "[m]ere presence at the scene of a crime with knowledge of its perpetration does not render the observer accessorially liable therefor (see *People v La Belle,* 18 NY2d 405, 412)" *(People v Reyes,* 82 AD2d 925, 926).

It should be emphasized that inasmuch as respondent's alleged connection with possible criminal conduct is solely in the role of an accessory, and there is not the slightest indication of any direct evidence linking him to the adult's supposedly illicit activity, the case against him is entirely circumstantial. The police officer's testimony then would have had to establish facts excluding to a "moral certainty" the hypothesis of respondent's innocence. *(See, People v La Belle, supra,* at 412.)

Although the majority apparently is of the view that the police officer's testimony as to respondent's actions and demeanor would, or, more correctly, could have pointed with sufficient probative force to respondent's guilt, that is nothing but the purest speculation. The court was bound to decide the motion to dismiss on the basis of the ACC's opening state-

ment. *(People v Kurtz, supra,* at 386.) From that statement and the ACC's ensuing remarks, the court could only have gathered that it was being asked to adjudge respondent guilty of criminal mischief and attempted petit larceny without any testimony from the complainant as to ownership or lack of permission, without any indication that the property concerned had in fact been damaged, and with only the observations of the arresting officer, none of which were even briefly specified, to connect respondent culpably with the adult's activity. Under these circumstances, where there appeared not even a small possibility that the charges could be proven beyond a reasonable doubt, it was not, in my view, an abuse of discretion for the court to dismiss the petition at the end of the ACC's opening statement.

Turning to the *Matter of Timothy L.,* the respondent there was charged with acts which, if committed by an adult, would constitute the offenses of petit larceny and third degree possession of stolen property (now, pursuant to the Penal Law, as amended by L 1986, ch 515, criminal possession of stolen property in the fifth degree). In his above-quoted opening, the ACC advised the court that there would be no testimony from the complainant and that the entire case would rest upon the testimony of the police officer who witnessed respondent "take or possess" an umbrella. The ACC's statement does not say from whom the umbrella was taken or describe any of the circumstances of the alleged theft. The ACC urged, nevertheless, that the completely unspecified circumstances attending the umbrella's asportation and possession by respondent would prove beyond a reasonable doubt that respondent did not own the umbrella, had no permission to use it, and intended to keep it from its owner.

I do not say that the presentment agency must prove its case in its opening statement. I do, however, think that, having indicated its readiness to try a matter, the presentment agency should, in its opening, at least be able to indicate to the court that there is a viable case to be made. In a larceny case where there is no complainant to testify as to the ownership of the allegedly stolen items or to establish that there was no permission given for their appropriation or use, and it is proposed that these elements and the intent of the accused are to be established by circumstantial evidence alone, it would seem that the court should, at a minimum, be briefly apprised of the specific circumstances, proof of which would warrant the inference of those facts elemental to the

respondent's guilt. *(See, People v Kurtz, supra,* 51 NY2d at 384.)* Here, the court was left completely in the dark. If, after having permitted the presentment agency full opportunity to give an intelligible account of the case to be made, the bare factual outlines of the matter are still indiscernible, I see no basis for requiring the court to permit the trial to proceed. It must be presumed that if there were a viable case, the presentment agency would be able to so indicate in its opening.

A careful reading of the record in each of the within matters discloses that the court afforded the presentment agency ample opportunity to set forth the specific circumstantial facts whose proof would support the respondent's guilt. In each case, however, the ACC proved either unwilling or unable to articulate the factual basis for the charges against the respondent, beyond what had been set forth in the manifestly inadequate opening. The ACC's reliance on *Borrero (supra)* was not per se inappropriate, for in certain situations lack of ownership and permission may be proven by circumstantial evidence. A prosecution is, however, not sustainable upon theory alone; there must in addition be facts which make reliance on the theory proper. Some of these facts must be brought to the court's attention from the outset, at least to the extent necessary to show that the case is viable. Where the case rests wholly, or in large part, upon circumstantial evidence necessitating numerous inferential leaps, it would seem particularly important that the factual bases for the proposed inferences be set forth in the opening statement. When this is not done, and the court is given no indication whether the necessary inferences can be made, much less whether they can be made with the very high degree of strength necessary to exclude any reasonable doubt as to the respondent's guilt, there is, in my view, no ground to permit the trial to go further. To allow the proceeding to continue on the unfounded speculation that something might turn up is both unfair to the respondent, and wasteful of precious court resources.

Accordingly, as the Family Court's dismissal of the within petitions was, in my view, entirely appropriate, I dissent and would affirm the appealed orders.

MILONAS and WALLACH, JJ., concur with SULLIVAN, J.; MURPHY, P. J., and ASCH, J., dissent in an opinion by MURPHY, P. J.

Order, Family Court, New York County, entered on November 21, 1985, reversed, on the law, without costs and without disbursements, the petition reinstated and the matter remanded for further proceedings.

Order, Family Court, Bronx County, entered on January 30, 1986, reversed, on the law, without costs and without disbursements, the petition reinstated and the matter remanded for further proceedings.