OPINION OF THE COURT
Peter J. Benitez, J.
Defendant is charged with criminal mischief in the fourth degree (Penal Law § 145.00) and criminal tampering in the *325 third degree (Penal Law § 145.14). Defendant moves to dismiss the accusatory instrument pursuant to CPL 170.30 and 170.35, alleging that the factual allegations do not establish the offenses charged.
The accusatory instrument alleges, in substance, that defendant, a former driver with Escort Corporation, a car service owned by the complainant, possessed a two-way radio tuned to the radio frequency owned by the car service and that, during the period April 10, 1991 to April 19, 1991, for about 13 hours each day, defendant played heavy metal music over this radio frequency. The information further alleges that defendant’s conduct made it impossible for the car service to receive transmissions from its drivers in the field and rendered the radio communications of the car service inoperable during the nine-day period.
The People’s theory of criminal liability, as set forth in the information, is that defendant’s conduct "damaged and interfered with the radio frequency owned by Escort Corporation.” In their responsive papers, the People have restated their theory of criminal liability and alleged that defendant’s conduct damaged and interfered with the complainant’s "radio frequency,” rendered the transmitting hardware used to transmit and receive communications over this frequency inoperable, and blocked the "radio waves” transmitted over complainant’s frequency.
Defendant argues that a radio frequency is not "property” under the statutory sections charged and, even if it is property, is not property of the complainant.
Criminal mischief and criminal tampering are defined, respectively, as damaging and tampering with the "property” of another. While the Penal Law uses the term "property” in many different sections defining conduct constituting criminal conduct, it does not define "property” for each such use. Rather, Penal Law § 155.00 (1) specifically defines "property” as that term is used in title J of the Penal Law (arts 155, 156, 160, 165), which title includes larceny, robbery, possession of stolen property, computer crimes, misapplication of property, unauthorized use of a vehicle and certain other offenses. That definition of property includes both tangible and intangible property. (See, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 155, at 98-99 [1988], and the cases cited therein.)
On the other hand, article 145 of the Penal Law defining *326 the offenses of criminal mischief and criminal tampering does not specifically define the term "property” as used in that article. Nevertheless, it appears that the drafters of the Penal Law intended that the term property, as used in article 145, be more restrictive than the same term as used and defined in theft offenses, article 155. (See, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law §§ 145.00, 145.14, at 59-60, 69-70 [1988].) In that Commentary, Judge Donnino sets forth the position of the executive director and the counsel to the Commission on Revision of the Penal Law that the term "property” as used in the sections defining criminal mischief and criminal tampering means only tangible property. Additionally, without citing specific authority, at least two appellate courts have stated that "property” subject to the criminal mischief statute must be tangible property. (See, Matter of Kevin B., 128 AD2d 63, 69 [1st Dept 1987], affd sub nom. Matter of Timothy L., 71 NY2d 835 [1988]; People v Simpson, 132 AD2d 894, 895 [3d Dept 1987].)
As stated above, the People argue, collectively and in the alternative, that defendant caused damage to and tampered with complainant’s "radio frequency,” complainant’s communication equipment, and complainant’s "radio waves.” It is commonly understood that the broadcasting of radio signals or waves is the transmission of electromagnetic impulses through the air at certain frequencies.* The frequency is simply the number of vibrations in a period of time. While the radio signals and the equipment used to generate and transmit *327 them are, therefore, tangible property, the frequency and right to use a particular frequency are not tangible property. Accordingly, the radio signals generated by complainant and his employees and the electronic equipment used to transmit and receive those signals are property subject to the criminal mischief and criminal tampering statutes.
The accusatory instrument alleges both damage to (criminal mischief) and tampering with (criminal tampering) the radio signals and the transmitting and receiving equipment owned by complainant. The distinction between criminal mischief and criminal tampering generally is that the former requires a showing of damage to another’s property while the latter does not. However, damage to property occurs even if the harm caused is a loss of the use or effectiveness of the property. (See, e.g., People v David, 133 AD2d 277 [1987]; Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 145.00, at 59 [1988].) Clearly, the acts alleged to have been committed by defendant, if true, constitute both damage to and interference with the complainant’s radio signals and his communications equipment in that defendant’s alleged transmission of music over the frequency used by complainant prohibited complainant’s signals from being transmitted or his employees’ signals from being received by him and also effectively interfered with complainant’s use of his communications equipment. Such actions adversely affected the use and efficiency of complainant’s radio signals and the electronic equipment used to transmit and receive communications.
Accordingly, this court finds that the factual allegations contained in the accusatory instrument establish the offenses of criminal mischief in the fourth degree (Penal Law § 145.00), and criminal tampering in the third degree (Penal Law § 145.14). Defendant’s motion to dismiss is, therefore, denied.

 In 1931, the Supreme Court described radio transmission as follows: "As to the general theory of radio transmission there is no disagreement. All sounds consist of waves of relatively low frequencies which ordinarily pass through the air and are locally audible. Thus music played at a distant broadcasting studio is not directly heard at the receiving set. In the microphone of the radio transmitter the sound waves are used to modulate electrical currents of relatively high frequencies which are broadcast through an entirely different medium, conventionally known as the 'either.’ These radio waves are not audible. In the receiving set they are rectified; that is, converted into direct currents which actuate the loud-speaker to produce again in the air sound waves of audible frequencies. The modulation of the radio waves in the transmitting apparatus, by the audible sound waves, is comparable to the manner in which the wax phonograph record is impressed by these same waves through the medium of a recording stylus. The transmitted radio waves require a receiving set for their detection and translation into audible sound waves, just as the record requires another mechanism for the reproduction of the recorded composition. In neither case is the original program heard; and, in the former, complicated electrical instrumentalities are necessary for its adequate reception and distribution.” (Buck v Jewell-LaSalle Realty Co., 283 US 191, 200-201 [1931].)